**S. NAITOVE & CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

Court of Appeals of District of Columbia.
Submitted April 4, 1929. Decided
May 6, 1929.

No. 4768.

R. Kemp Slaughter and Hugh C. Bickford, both of Washington, D. C., and Robert E. Coulson, of New York City, for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, L. W. Scott, Sewall Key, and Millar E. McGilchrist, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellant, a New York corporation engaged in buying and selling woolen, silk, and cotton goods, had five employees who constituted the entire buying and selling staff of the business. These employees, dissatisfied with their compensation, threatened to go into business for themselves. To retain them, an agreement was entered into by the appellant and the employees under which they were to participate in the profits of the business. The agreement was expressed in a resolution passed by the board of directors on February 10, 1919, as follows:

"Resolved, That additional compensation for the year 1919 be paid to the following officers and employees of the company in accordance with the practice of the company on the following basis:

"Mr. Moe Naitove, 10% of the net profits for the year 1919;

"Mr. Nat Naitove, 10% of the net profits for the year 1919;

"Mr. Jack Naitove, 10% of the net profits for the year 1919;

"Mr. Moe Turnan, 5% of the net profits for the year 1919;

"Mr. George Naitove, 5% of the net profits for the year 1919.

"Provided, however, that any and all sums to which the above named officers and employees may become entitled under the terms of this resolution shall remain in the business at the risk of the business for a period of five years, and that prior to the expiration of such period said officers and employees shall be entitled to demand and receive payment of the sums to which they may become entitled only to the extent that drawings against such sum may be authorized by

the president of the company, it being the intention of this resolution that any and all contingent compensation to which said officers and employees may become entitled under the terms of this resolution, be at the risk of the business, in the sense that it shall be subject to pro rata deductions in the event that losses are incurred by the business during the period within which such sums are to remain at the risk of the business; and provided, further, that no officer or employee shall at any time be entitled to withdraw any sums credited to him under the terms of this resolution, except as hereinabove provided, unless he shall remain in the employ of S. Naitove Co., Inc., during the entire period during which the credits mentioned are to remain at the risk of the business, and in the event of the discharge of any such officer or employee or withdrawal during such period, all right, title or interest of such officer or employee in or to any sums credited to said officer or employee under the terms of this resolution shall revert to this corporation."

Appellant kept its books on an accrual basis of accounting, and, in closing the books of December 31, 1919, the entry as to these five employees was computed as follows:

Charge, selling and commission............ $116,548 44

| Credit Moe Naitove | $ 29,137 11 |
|---|---|
| Nat Naitove | 29,137 11 |
| Jack Naitove | 29,137 11 |
| George Naitove | 14,568 56 |
| Moe Turnan | 14,568 55 |

additional compensation as per agreement.

The resolution was continued in force during the year 1920 on the same basis as in the year 1919, but in 1920 appellant suffered a loss of approximately $90,000; and pursuant to the resolution the books as of December 31, 1920, showed as to the participation by the five employees the following accruals:

| Charge Moe Naitove 10% | $10,441 42 |
|---|---|
| Nat Naitove 10% | 10,441 42 |
| Jack Naitove 10% | 10,441 42 |
| George Naitove 5% | 5,220 71 |
| Moe Turnan 5% | 5,220 71 |

Credit surplus account............... $41,765 68

Appellant in its return for the year 1919 deducted as expenses from its income the sum of $116,548.44, which represented the portion of the earnings which accrued to said employees pursuant to the terms and conditions of the agreement set forth in the resolution by the board of directors. The Commissioner disallowed this deduction, and on August 19, 1925, notified appellant corporation of a deficiency in its income and profits taxes for the calendar year 1919 of $59,-049.33.

From the ruling of the Board of Tax Appeals sustaining the Commissioner, the case comes here on appeal.

The tax in controversy was imposed under the provisions of the Revenue Act of 1918, 40 Stats. 1057.

"Sec. 212. (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

"Sec. 232. That in the case of a corporation subject to the tax imposed by section 230 the term 'net income' means the gross income as defined in section 233 less the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226."

"Sec. 234. That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The accounts under the agreement were kept on the books of appellant on an accrual basis, under which system these items of expense could not accrue until all the events occurred from which liability could be determined and become fixed. In pursuance of this system appellant credited on its books as of December 31, 1919, to its five employees $116,548.44. This represented the portion of appellant's earnings for that year to which the employees would be entitled, in the event the credits equaled or exceeded that amount during the remaining four years. But in 1920 the credits to the employees dropped to $41,765.68, thus demonstrating the total impossibility of determining until the expiration of the five-year period the amount of expense appellant would be entitled to deduct for compensation paid these employees. Construing the provisions of the income

tax law here involved, we are of the opinion that under the accrual system of accounting income may be said to be accrued when it is definitely received, and that likewise liabilities or expenses will be considered to have accrued only when the events have occurred from which liability or expense can be determined and fixed, even though payment is not yet due. This principle was involved in United States v. Anderson et al., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. In that case it appeared that the Yale & Town Manufacturing Company was in 1916 engaged in the manufacture of munitions. The tax was imposed upon the profits on the munitions manufactured and sold during that year, but which became due and was paid in 1917. In making its return for the year 1917, the company deducted from its income the munitions tax thus paid. The Commissioner of Internal Revenue held that the tax paid in 1917 should have been deducted from appellee's gross income in its return for 1916. The books of the company were kept under the accrual system. The court, in disposing of this case, said: "Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued."

It will be observed that this case turned upon the fact that on the books of the company the munitions profits had accrued in 1916, though not payable until 1917. We think, however, that in the present case, where the facts establish a situation exactly the converse, the opinion is decisive in that it implies that if the profits had not become fixed and determined in 1916, though not payable until a later date, they would not have been subject to taxation until such time as the profits had accrued and become fixed and determined.

To the same effect is American National Co., Receiver, v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946, where the corporation was engaged in the business of making and selling loans on five-year notes and mortgages. It derived its income from commissions in the form of two year notes made by the borrowers, and in selling loan notes to investors in which it agreed, as an inducement, to pay them on loans sold, bonuses of a specified per cent. yearly during the life of the loans. It was held that, under section 13(d) of the Revenue Act of 1916 (39 Stat. 771), and regulations of the treasury pursuant thereto, according to the method of accounting, inasmuch as the aggregate of the commission notes and the accrued bonus contracts made during the year became fixed and determined though not due and payable, they properly could be deducted from the gross commissions for the ascertainment of taxable income.

But it will be observed that in this case, as in the Anderson Case, the amount deductible was fixed and determined, which distinguishes these cases from the case at bar. The resolution in the present case amounts to nothing more than an offer to pay additional compensation to certain employees under a conditional contract which could only mature into an obligation and become binding upon appellant company on complete performance by its employees of the acts called for therein, and which could not be ascertained until the expiration of the five-year period fixed by the agreement.

In the case of Edwards v. Keith (C. C. A.) 231 F. 110 (certiorari denied 243 U. S. 638, 37 S. Ct. 402, 61 L. Ed. 942), the question involved was whether income had accrued on a contract with a life insurance agent under which he sold policies on which he was to receive a percentage of each annual renewal payment when the same was paid by the insured. It was contended by the plaintiff that the entire income from this source accrued at the time the policy was sold. The court, rejecting this theory, said: "If an agent for a life insurance company does a particular job, e. g., persuades John Doe to insure in the company on July 1st, 1915, and receives as part compensation for that work a certain sum when Doe pays his first premium in July, 1915, surely he includes that in his income return for 1915. That certainly is income. If under this arrangement with the company he receives a further sum of money as compensation for the same job in July, 1916, when John Doe pays his second premium, we cannot see why that is not income for 1916—in the ordinary sense of the word. Why it is not within the language of the act 'income arising or accruing in the

calendar year 1916' and 'derived from personal services' we are entirely at a loss to understand. The statute does not provide that the 'personal services,' compensation for which is to be considered income, must be rendered in the same year in which the compensation is received. It may be noted that, although fully earned by work already done, there is no certainty that the sum conditionally promised for an ensuing year will ever be paid or will accrue or come due; John Doe may die within the first year, or at its expiration may refuse to renew his policy in which event the company is not obligated to pay its agent anything beyond the amount already paid him; the obligation to pay does not arise until John Doe actually pays his renewal premium in cash."

The decision of the court in the above case is conclusive, we think, to the effect that in a unilateral or conditional contract, as the one here involved, the liability incurred is not to be deducted as expense until it has become fixed and determined, and it is then deductible as of the year when that event occurs—in the instant case, at the expiration of the five-year period.

Closely analogous to the present case is United States v. Block & Kohner Mercantile Company, a corporation, decided in the United States District Court for the Eastern District of Missouri on January 10, 1929, 33 F.(2d) 196. In that case defendant corporation on February 1, 1919, made a contract with one Weinbach and wife in which Weinbach agreed to work for the company on a salary of $4,800 per annum, payable monthly. In addition he was to receive one-third of the net profits of defendant's business during the life of the contract. If net losses resulted from the business, one-third of such losses were to be deducted from a $5,000 fund deposited by the wife for this purpose. One-third of the profits for the year 1919 amounted to $5,193.27, which was credited on the books of the company to Weinbach; but the losses for 1920 and 1921 exceeded the profits for 1919, leaving nothing due Weinbach at the termination of the contract.

The company sought to deduct from its income for 1919 as expense the amount credited that year to Weinbach. The court holding that this could not be done said: "The defendant's books, at the end of the year 1919, reflected this credit to Weinbach. It did not represent the sum due the salesman at that time. It represented a sum that would become due the salesman for the year 1919,

provided the business continued to show a profit for each of the subsequent years of the life of the contract. If the business had shown a loss for either year of 1920 or 1921, then the above share of the profits credited to Weinbach would have been reduced by his share of the loss. This is what actually occurred. The business did show a loss during both of these subsequent years, so that the defendant actually never became liable to the salesman for any amount of profits. * * * Under the facts of this case it cannot be said that the defendant incurred this item of expense for the year 1919. The defendant was not entitled to deduct this amount from its gross income for that year. This view is sustained by United States v. Anderson, 269 U. S. 422 [46 S. Ct. 131, 70 L. Ed. 347]; Edwards v. Keith [C. C. A.] 231 F. 110, Holmes Federal Taxes (6th Ed.) page 1248."

It will be observed that under the contract as set forth in the resolution all sums to which the employees might become entitled during the period of five years should remain in the business, and should be subject to pro rata deductions in the event of losses incurred in the business during the five-year period. Appellant paid out nothing. It took nothing from its business. The entry on the books represented only a possible future liability. In other words, the profits and losses credited and charged to the account of each of the employees should be accounted at the end of the five-year period, and if the credits exceed the losses the excess would represent the amount to which the employee would be entitled. On the other hand, if the losses exceeded the credits, the employee would be entitled to nothing. It follows that the events which were to determine and fix appellant's liability to its employees could not occur until the expiration of five years; and, by the terms of the agreement, if an employee was discharged or left the employ during the period of five years, he should take nothing under the agreement whether the credits were in his favor or not. It follows therefore that the events which were to determine and fix appellant's liability did not occur in the year 1919, and could not occur so as to admit of a final determination until the end of the five-year period, at which time the definitely fixed and accrued expense could be deducted and credit taken on its tax in the current year.

The decision of the Board of Tax Appeals is affirmed, with costs.