## BLOCK & KOHNER MERCANTILE CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
January 15, 1930.

No. 8622.

M. P. Phillips, of St. Louis, Mo. (Jacob M. Lashly and Harold C. Ackert, both of St. Louis, Mo., on the brief), for appellant.

Howard Williams, Asst. U. S. Atty., and E. E. Angevine, Atty. Bureau of Internal Revenue, of Washington, D. C. (Louis H. Breuer, U. S. Atty. of Rolla, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellant is a Missouri corporation engaged in the wholesale shoe business in St. Louis. One Jake Weinbach was a salesman experienced in that business, and on the 19th of February, 1919, the mercantile company, named as first party, Weinbach, named as second party, and Weinbach's wife, named as third party, entered into a contract reciting that the first party was desirous of opening and carrying on a special department of its business for the selling of regular lines of shoes at wholesale under the name and style of "Acme Shoe Specialty Company," and desired to engage said second party as manager of that department. It was further recited that the second and third parties desired to participate in some manner in the profits of the new department, and of the entire business of the first party. By the contract it was accordingly provided that the second party should become manager of said Acme Shoe Specialty Company, and should travel and call on the trade during the regular season for a period of three years from the date of contract, at a salary of $4,800 per year, payable monthly, or such other salary as might thereafter from time to time during said period be drawn by the president and secretary of the corporation. The party of the third part, as an inducement to first party to engage the services of second party, agreed to deposit with first party the sum of $5,000, as a guaranty for the agreements in said contract made by second and third parties. The instrument contained the following paragraphs material to the issue presented for determination:

"In further consideration of the services to be rendered by party of the second part, and the deposit of said sum of Five Thousand Dollars ($5000.00) by party of the third part, the party of the first part shall pay to the party of the third part one-third (1/3) of the net profits earned by party of the first part during the continuance of this contract, including the business conducted under the name of the Acme Shoe Specialty Company, and the parties of the second part and third part shall likewise share any losses in said business during said period.

"Upon the termination of this contract, either by expiration, cancellation, or otherwise, the profits shall be figured to the date of such termination and any net losses to be shared by the parties of the second part and third part shall be deducted from the said sum of Five Thousand Dollars ($5000.00) deposited by the party of the third part; and the party of the first part shall pay to the party of the third part said sum of Five Thousand Dollars ($5000.00) so deposited, less any deductions made, as hereinabove stated, for losses incurred, or, if there be no losses, then plus the proper share of profits.

"If the party of the second part shall die during the period of this agreement (sic) the right to the said monthly compensation of Four Hundred Dollars ($400.00) shall terminate, and the right to the division of profits, hereinafter mentioned, shall also terminate."

The case was tried upon an agreed statement of facts. The further material parts of the stipulation are the following:

"The contract was performed until May 27, 1921, when because of losses it was terminated by mutual agreement. The petitioner on its books of account credited to Weinbach as of December 31, 1919, $5,756.34, which was later corrected to $5,193.27, representing his share of the profits under the contract aforesaid up to December 31, 1919. The said books of account were kept on an accrual basis. There was a loss in 1920 and until May 27, 1921.

"During the entire period of the contract herein, Jake Weinbach devoted his full time to the business of defendant herein under and by virtue of the provisions of the contract herein.

"Jake Weinbach and his wife Molly paid to the State of Missouri income taxes for the calendar year 1919. The tax paid by Weinbach was based upon his stipulated salary of Four Hundred Dollars ($400.00) a

month, due and paid to him by virtue of the provisions of the contract herein, said tax amounting to Eighty-six and 41/100 Dollars ($86.41). Mrs. Weinbach paid to the State of Missouri an income tax based on shares of the profits under the contract herein as shown by the books of defendant, which profit was in the sum of Five Thousand One Hundred Ninety-three and 27/100 Dollars ($5,193.27) and which profit was, as aforesaid, the sole basis of the return and payment made by Weinbach.

"The actual payments of the taxes aforementioned were made at the request of the Weinbachs by the defendant herein, Block & Kohner Mercantile Company, direct to the collector authorized to receive income tax payments for and on behalf of the State of Missouri. The amounts so paid, to-wit, $86.41 for Jake Weinbach and $86.36 for Molly Weinbach, were charged back and debited by the defendant herein to the account of Mr. Weinbach.

"The payments aforesaid and the entry in the books of the defendants herein charging back and debiting to the said Weinbach the amount of taxes aforesaid was duly entered in the books of the defendant on to-wit, the 26th day of May, 1920.

"On or about the 15th day of March, 1920, the defendant filed with the Collector of Internal Revenue for the first District of Missouri, its income tax return for the calendar year 1919, purporting to be a true and correct statement of the gains, profits and income from all sources received by the said defendant during the calendar year 1919, from which it was made to appear that the defendant's net income for the calendar year 1919 was $11,466.43 and the total amount of tax due thereon, $1,929.57, which amount was paid by the defendant.

"The defendant in computing his income tax for the calendar year 1919, allowed as a deduction for ordinary and necessary expenses in conducting its business, the sum of $5,193.27, claimed to have accrued or been incurred in that year under the terms of an agreement between the defendant and one Jake Weinbach and Mollie Weinbach, his wife."

The agreement to which reference is made is the contract of February 1, 1919, the pertinent parts of which have been recited and quoted.

March 2, 1927, the United States filed suit in the District Court for the Eastern District of Missouri, alleging that the return filed by appellant March 15, 1920, was incorrect, misleading, and false, in that it showed appellant's net income for the year 1919 to be $11,466.43, whereas in fact appellant's net income for that year was $17,223.27; that the Commissioner of Internal Revenue, upon additional information and facts submitted, had directed a review and audit to be made of the income received by appellant in the year 1919. As a result of such review and audit, that income was corrected and redetermined, and a deficiency in tax for 1919 was found to be due from appellant in the ultimate sum, after all proper allowances, of $1,691.94. The United States prayed judgment for that amount, with interest. A jury was waived by written stipulation, and the court found for the United States as prayed.

Revenue Act of 1918, § 234a (40 Stat. 1077) provides: "That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed it as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," etc. The decision in this case turns upon whether the deduction claimed was an expense which was incurred during the taxable year 1919. The books of appellant were kept upon an accrual basis, and this item of $5,193.27 was entered upon said books, as of December 31, 1919, to the credit of Weinbach and, therefore, as an expense incurred during that year under the contract. Appellant relies chiefly upon the doctrine announced in United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347, but we do not think that case supports its contention under the facts presented. In his argument in the Anderson Case the Solicitor General said: "Under the accrual system an expense accrues when all the events have occurred from which liability is determined and the liability has become fixed, even though payment is not yet due."

The correctness of this statement cannot well be disputed. It received substantial approval in the opinion of the Supreme Court. Mr. Justice Stone said: "Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the

amount of the tax and determine the liability of the taxpayer to pay it."

The necessary import of this language is that liabilities or expenses will not be considered to have accrued unless all the events have occurred from which liability and expenses can be determined. Naitove & Co. v. Commissioner (App. D. C.) 32 F.(2d) 949. In the instant case the result of business during the current year was reflected by the books largely as a matter of convenience in recording; but at no time was the expense of Weinbach's salesmanship in excess of his salary, and any resulting liability of appellant therefor, fixed or determined until the termination of the contract. As a matter of fact no such liability ever accrued. The losses in 1920 and 1921 exceeded the bookkeeping credit of 1919, and more than absorbed the $5,000 deposit made. The contract is unambiguous in its provision that profits and losses should be figured only upon its termination. Until that time they remained unascertained and undetermined. The sum of $5,193.27 allowed as a deduction by appellant in making its income tax return of March 15, 1920, was never incurred as an expense of carrying on its business either in 1919 or at any other time.

The judgment below was fully supported by the facts agreed and found, and is accordingly affirmed.