## KENTUCKY & INDIANA TERMINAL R. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5759.

Circuit Court of Appeals, Sixth Circuit.

Dec. 18, 1931.

Edw. P. Humphrey, of Louisville, Ky., and Robt. N. Miller, of Washington, D. C. (Humphrey, Crawford & Middleton, of Louisville, Ky., on the brief), for petitioner.

M. K. Rothschild, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, L. A. Norman, and E. C. Algire, all of Washington, D. C., on the brief), for respondent.

Before HICKS and HICKENLOOPER, Circuit Judges, and SIMONS, District Judge.

HICKS, Circuit Judge.

Petition by Kentucky & Indiana Terminal Railway Company, a corporation, to review a decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing against it on redetermination a deficiency in income taxes for the year 1923 in the sum of $30,697.87.

Prior to January 1, 1918, petitioner owned and operated railroad terminal facilities in Louisville. As a component part thereof it owned a bridge across the Ohio river over which it operated a double track railroad. The bridge carried independent electric, telephone, and street railway lines, and the usual vehicular and pedestrian traffic, for all of which petitioner charged rentals and tolls. The stock of petitioner was owned by three railway companies, each owning one-third. Petitioner's properties, including that portion of the bridge carrying the railway tracks, were used for the business of the stockholding companies.

All of petitioner's properties were taken over by the United States and operated by the Director General of Railroads under federal control from January 1, 1918, until March 1, 1920. There was no agreement for "just compensation" to petitioner for the use of its property upon the basis of the "standard return" (Federal Control Act, ch. 25, § 1, 40 Stat. 451), but during federal control the Director General did pay petitioner from time to time on account of compensation an amount sufficient to pay the interest on petitioner's bonds. This was substantially all that was paid to petitioner during that period. Subsequent to the return of its property at the end of federal control, petitioner and the Director General entered into negotiations for a settlement of all matters between them. Upon presentation of their respective claims, specific in nature and amount, some of the items of each were mutually assented to, while others were disputed. Upon such basis, no settlement could be reached, whereupon specific items were disregarded, and an agreement was arrived at by which petitioner paid the government $50,000 in full settlement of all claims of either party.

Among these items was one for $382,391.-60, which the Director General had charged against petitioner for additions and betterments during the federal control period. This item was undisputed. Petitioner was by law obligated to pay it. See Federal Control Act, March 21, 1918, c. 25, § 6, 40 Stat. 451, 453. Upon the other hand, petitioner had debited the Director General with bridge tolls collected by him in the sum of $231,178.99. It also claimed $1,711.93, interest upon quarterly balances, and $16,422.-32, interest on completed additions and betterments.

The principal controversy was over the tolls. The amount was not questioned, but the Director General insisted that these tolls belonged to the government. Prior to federal control, they were collected by petitioner and applied to operating expense, and any deficit was defrayed by the three stock owning companies. During federal control, there was never any understanding between the Director General and petitioner as to the disposition or ownership of the tolls. The Director General applied them to operating expenses just as had petitioner. He probably assumed that he was justified therein because he was paying as compensation a sufficient amount to discharge petitioner's bond interest. Petitioner claimed that these tolls constituted noncarrier revenue which belonged to it. The Board of Tax Appeals, upon consideration of all disputed points between the petitioner and the Director General, concluded that at the settlement the Director General had conceded to petitioner the merit of its claims for tolls and interest. We concur in this view.

We cannot assume that the Director General forgave the claim against petitioner for additions and betterments. We think the proper inference is that he allowed the bridge tolls and interest, which were less than the additions and betterments, to go in discharge thereof. If this is the correct view, it is obvious that through the settlement of the government's claim for additions and betterments petitioner has received taxable income to the value of the tolls and interest. The contrary was urged before the Board of Tax Appeals, but apparently has been abandoned here.

Petitioner, however, insists that, the tolls having been collected in the federal control years and the interest having accrued during the same period, these items for tax purposes should be allocated to those years, instead of 1923; the petitioner having under the direction of the Interstate Commerce Commission kept its books upon the accrual basis. But the obstacle is that there was no acknowledgment or determination of liability on the part of the government for either tolls or interest until the settlement in October, 1923. Petitioner made no demand for either tolls or interest during federal control. It did not place these items upon its books or return them as accrued income in the federal control years. This omission was not the result of oversight. It arose from the uncertainty petitioner entertained as to its duty to return the items for those years. This is significant, inasmuch as the burden was upon petitioner to establish before the Board of

Tax Appeals that the Commissioner should have allowed them for those years. See Burnet v. Sanford & Brooks Co., 282 U. S. 359, 366, 51 S. Ct. 150, 75 L. Ed. 383. The tolls were omitted from the original claim presented to the Director General. Neither the tolls nor interest items became the subject of negotiations until June, 1923, when liability for each was vigorously disputed. We think that the event which definitely determined the government's liability for either tolls or interest was the settlement in October following, and that the taxable income in question arose then and not previously. See Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538; Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 120, 50 S. Ct. 273, 74 L. Ed. 733; Bauer Bros. Co. v. Comm'r, 46 F.(2d) 874, 876 (C. C. A. 6). These cases deal with expense rather than income items, but the applicable principle is the same. See, also, U. S. v. Anderson, 269 U. S. 422, 441, 46 S. Ct. 131, 70 L. Ed. 347; Burnet v. Sanford & Brooks Co., supra. Until the settlement it could not be known how petitioner would fare as a result of government operation.

The decision of the Board of Tax Appeals is affirmed.