**SKINNER MFG. CO. v. UNITED STATES.**
No. M–437.

Court of Claims.
Nov. 5, 1934.

744

necessity of operating on a very conservative basis until business conditions improved. He further stated: "Without waiving any of my rights under the contract, I have decided

Fred W. McReynolds, of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The sole issue in this case is one of law—the facts are stipulated. The question for decision relates to extra compensation granted by the directors of the corporation in the year 1926 to its president and general manager. In the income tax return for that year, the corporation deducted this item from the gross income, and the Commissioner of Internal Revenue disallowed the deduction.

The plaintiff is a large manufacturer of macaroni products. From the facts stipulated, it appears that the plaintiff entered into a contract with Skinner to pay him $18,-000 a year for his services as president and general manager for a period of ten years. There is no dispute about the reasonableness of this salary. There was only one other officer, and he drew a small salary. The entire time of both of these officers was devoted to the interest of the corporation. In 1921 the business was very poor, and resulted in a heavy loss for that year, and in the two succeeding years the company failed to make a fair profit. In the spring of 1921 Skinner wrote a letter to the company in which he referred to the bad business conditions, stating that the volume of business had not increased as expected, and that there was a

to donate to the company the sum of $500 per month from my salary and will continue to make such a donation until I find our business has improved and again approximates normal." He accordingly instructed the bookkeeper to make the proper entries on the books of plaintiff effective as of May 1, 1921. From time to time during the two subsequent years he revoked this relinquishment of part of his salary when business improved and put it into effect when business declined, so that he received as salary in 1921, $14,000; in 1922, $12,000; in 1923, $13,500; in 1924, $17,000; in 1925, $18,000; and in 1926, $18,-000. From 1921 to 1924 Skinner had received a salary $15,500 less than the amount called for in his contract, and which amount he had voluntarily waived for the benefit of the corporation. The books of the company show only the actual amounts received by Skinner each year, and there is no accrual entry shown. The corporation, in making its income returns for these years, took only the amounts actually paid to and received by Skinner as salary expense deductions and not the amount named in the contract. Both Skinner and the corporation considered and treated the contract as modified by the letters, and acted accordingly. In 1924 the business appears to have improved generally, and the salary under the contract was restored and drawn by Skinner until 1926, when he wrote the corporation a letter stating that during the years of bad business he had reduced his salary to help the corporation, and had pledged his own assets to secure corporate loans. Due to his unremitting efforts and successful management, the sales had increased from $700,000

in 1920 to $1,286,000 in 1926; and he had changed a loss of $174,000 in 1920 to a net profit of $119,000 in 1926. He suggested that the company now make additional payment for services rendered from September 25, 1920, up to date, sufficient to make up in amount the salary waived by him from 1921 to 1924. On October 5, 1926, the directors authorized this payment, and the sum was duly entered on the books of the corporation to Skinner's credit and charged to salary expense. The Commissioner of Internal Revenue, in auditing plaintiff's return for the year 1926, disallowed this amount of $15,500 as a salary expense deduction.

The plaintiff kept its books and rendered its income returns on an accrual basis.

The only question is whether the amount allowed Skinner as extra compensation for services rendered in previous years constitutes an allowable deduction to plaintiff for the year 1926. The applicable statute, section 234 (a) (1) of the Revenue Act of 1926, 26 USCA § 986 (a) (1), allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * · * " The reasonableness of the compensation does not have to be considered, because the parties have agreed the salary arrangement was reasonable. This does not mean that $33,500 ($18,000+$15,500) was a reasonable salary for the services rendered in that year, but that it was reasonable for the services rendered in 1926 plus the services rendered in the years 1921 to and including 1926 by which plaintiff sought to compensate Skinner. As the court said, however, in Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 119, 50 S. Ct. 273, 274, 74 L. Ed. 733: "The statute does not require that the services should be actually rendered during the taxable year, but that the payments therefor shall be proper expenses paid or incurred during the taxable year."

The character of the expense is not in dispute. It is agreed that it was a proper expense incurred in carrying on the plaintiff's business. The difference between the parties is when the expense was incurred. The plaintiff charged it in the year it was authorized and paid. The defendant claims it should have been spread over all the years involved, because plaintiff's books were kept on an accrual basis; in other words, that $18,000 should have been charged on the books each

year as the salary of the president and general manager and the sum, less that amount which he returned to the company, credited to some other account. But the books of the company reflected the true situation and did not show any accruals and only the actual amount paid and received by the president and general manager. In United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347, the court held that an item accrues when all events have occurred to fix the amount of the payment and "determine the liability of the taxpayer to pay it." Cf. American National Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946, and Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010.

■ Considering the contract of September 25, 1920, and disregarding the letters of Skinner, we would certainly say that a salary deduction of $18,000 accrued in each of the years 1921 to 1926. Upon the rendering of the services by Skinner, the plaintiff would have become liable to pay Skinner that amount in each of those years.

But, as a result of the letters which were written by Skinner waiving a part of his salary in each of the years 1921 to 1924, the entire amount of $18,000 did not accrue in those years, but rather $18,000 less the salary waived. It is true that Skinner expressly stated that, without waiving any of his rights under the contract, he was making a donation of a part of his salary to plaintiff, and from this it can be urged that the contract remained in full force and effect, and that what occurred was that Skinner constructively received the entire salary of $18,000 each year and constructively delivered a part of it to plaintiff as a gift. But, after all, taxation is eminently practical, Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758, and, from a practical as well as a reasonable standpoint, we do not think such a construction of the words used and acts of the parties is justified. In our opinion, what occurred amounted to nothing more than a waiver or relinquishment by Skinner of a part of what he was entitled to receive under the contract and the acceptance of such waiver or relinquishment by plaintiff which amounted to a modification of the contract in that respect.

■ That such was the interpretation placed by the parties upon what occurred is abundantly shown by the record. Skinner initiated the modification, terminated it temporarily, started it again, and finally terminated it. The amounts waived were not accrued as

liabilities on plaintiff's books nor claimed as deductions in its returns for those years. There is accordingly no basis for setting up estoppel as an objection to the deduction such as existed in J. O. W. Gravely, 29 B. T. A. 29. In 1926, when Skinner suggested the payment to him of the amount which had been waived, he did not ask that an existing liability be satisfied, but rather that a special meeting of plaintiff's board of directors be called to consider the authorization for such a payment. The special meeting was held and the payment authorized. In the words of Chief Justice Hughes in the Ox Fibre Brush Company Case, supra: "The payments were made as a matter of internal policy having appropriate regard to the advantage of recognition of skill and fidelity as a stimulus to continued effort."

The contract was effectually modified by the acts of the parties to the extent of the amount waived, and the payment made to Skinner in 1926 of $15,500 did not accrue until that year.

In view of the foregoing, the case comes squarely within the principle laid down in Lucas v. Ox Fibre Brush Company, and plaintiff is entitled to the deduction claimed. Judgment will accordingly be entered for plaintiff for $2,322.47, with interest from January 21, 1929. It is so ordered.