COMMISSIONER OF INTERNAL REVE-
NUE v. BLAINE, MACKAY, LEE CO.
(two cases).

Nos. 8109, 8110.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 5, 1943.

Decided March 6, 1944.

F. E. Youngman, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Benjamin M. Brodsky, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Frank B. Quinn, of Erie, Pa. (English, Quinn, Leemhuis & Tayntor, of Erie, Pa., on the brief), for respondent.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The petition by the Commissioner at No. 8109 seeks review of a decision by the Board of Tax Appeals with respect to the taxpayer's liability for income and excess profits taxes for the year 1935, while the petition at No. 8110 involves the taxpayer's liability for unjust enrichment taxes for the taxable year ended December 31, 1935.

At all times herein material, the taxpayer (a Pennsylvania corporation) was engaged primarily in the processing of flour and cereals from wheat. It kept its books on the accrual basis and made its returns for federal tax purposes on that basis. The question which we shall first treat with concerns deductions made by the taxpayer from its 1935 gross income for payments made in 1936 and 1937 under the following circumstances.

In 1935, while the taxing provisions of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., were in effect, the taxpayer included the processing tax in the prices which it charged its customers for its products. The passing of the tax to the customers was accomplished by the use of uniform sales contracts by the taxpayer wherein or whereon provisions efficient to the end indicated were either contained or endorsed. On June 30, 1935, the taxpayer obtained a preliminary injunction from a United States District Court restraining the collection from the taxpayer of the processing taxes levied under the Act in respect of the products which it sold. In lieu of a security bond, it was provided that the taxes received by the taxpayer should be impounded with the clerk of the court. On January 6, 1936, the Supreme Court held the taxing provisions of the Act unconstitutional (United States v. But-

ler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914), and on January 23, 1936, the clerk of the District Court returned to the taxpayer the amount of the impounded taxes, less one per cent poundage. The taxpayer also had in its possession the processing taxes accrued for December 1935, which had not yet been impounded. In 1936 and 1937 the taxpayer reimbursed certain of its 1935 vendees to the extent of the portion of the prices charged them which represented the amount of the processing tax. The sums so refunded amounted to approximately 63% of the total amount of the processing taxes received by the taxpayer on its 1935 sales and, of the amount so refunded, approximately 5% was refunded in 1936 and the balance in 1937.

The Board treated the taxpayer's liability for income and excess profits taxes and for the unjust enrichment taxes as involving the same question, namely, whether the payments made by the taxpayer to its customers in 1936 and 1937 constituted proper deductions from the taxpayer's 1935 income. The Commissioner has dealt with the matter on the same basis and the cases were consolidated for briefing and argument in this court.

■ From the foregoing recital of facts it is readily apparent that the instant case is indistinguishable in principle from the case of Commissioner v. Security Flour Mills Co., 135 F.2d 165, where the Court of Appeals for the Tenth Circuit held that like payments made to customers in 1936, 1937 and 1938 were voluntary and were deductible from gross income for the years when made, respectively. The court reversed the decision of the Board which had held that payments made in the years mentioned were deductible from the taxpayer's gross income for 1935. However, inasmuch as the Security Flour Mills case was pending in the Supreme Court on certiorari, and, more lately, in view of the decision in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 495, we purposely withheld our disposition of the instant case to await the decision of the Supreme Court in the Security Flour Mills case. That decision (Security Flour Mills Company v. Commissioner, 64 S.Ct. 596) has now been handed down and we, accordingly, hold that the reimbursements made by the respondent to certain of its customers in 1936 and 1937 for the sums which it had received from them in 1935 to cover processing taxes were not deductible from the taxpayer's gross income for 1935.

There is one further question in the instant case, not present in the Security Flour Mills case, as to a deduction claimed by the taxpayer in 1935 for a payment made to attorneys in 1936 for services rendered in connection with the proceedings for the injunction against the collection of the processing taxes. The services were performed pursuant to a contract entered into by the taxpayer and the attorneys in 1935.[1]

Under the contract, payment of compensation to the attorneys was contingent upon (1) whether the processing taxes levied by the Agricultural Adjustment Act would be held invalid and (2) whether the taxpayer would refund to its customers any of the taxes it had collected. Relevant to the first contingency, the contract expressly provided that if the processing tax was held to be constitutional, the attorneys were not to receive any compensation for their services. The second contingency had to do with the amount of compensation payable if the tax was held to be unconstitutional. In the latter eventuality, the fees payable to the attorneys were to

---

[1] The contract was embodied in a letter of July 28, 1935, addressed by the attorneys to the taxpayer, which reads as follows:

"It is understood that we are to perform all legal services in connection with procuring an injunction against the collection by the Collector of Internal Revenue of the so-called 'Processing Taxes.' That as compensation for our services, we are to receive 25% of the amount of the tax saved your company. However, in the event that your company is obliged to refund any of the processing taxes to the customer that in such event we shall receive only 20% of the amount so refunded.

"In the event that it is finally decided that the Processing Tax is constitutional so that your company does not obtain any savings, we are not to receive any compensation for our services.

"You have deposited with us this day one hundred dollars to cover costs. In the event that a saving of tax is made, the amount of this deposit is to be deducted before percentage is figured. In the event that no saving of tax is made, we shall refund such proportion of the one hundred dollar deposit as is not expended by us as costs in the suit."

be 25% of the taxes saved to the taxpayer, but if the taxpayer made refunds to its customers, then the fees, as to the amount so refunded, were to be 20% thereof.

It will be recalled that the processing tax was declared unconstitutional on January 6, 1936. On January 23, the day on which the impounded taxes were returned to the taxpayer, the latter paid its attorneys under the contract $14,599.62 as compensation for their services. On March 20, 1937, the attorneys refunded to the taxpayer $3,839 of the fees so paid. The reasons for this action are not specifically disclosed by the record. However, it does appear that it was subsequent to January 23, 1936, when the taxpayer made its refunds to customers of a portion of the processing taxes and, as the lesser percentage of compensation was applicable in the case of refunded taxes, it was not until the matter of refunds to customers was concluded that the amount payable to the attorneys under the contract could be definitely determined. The deduction claimed by the taxpayer for attorneys' fees paid was limited at the hearing before the Board to the net amount ultimately paid by the taxpayer. The Board, relying on its decision in Tobin Packing Co., Inc., v. Commissioner, 43 B.T.A. 642, held that the attorneys' fees paid were deductible from the taxpayer's 1935 gross income. We think this was likewise error.

■ In Security Flour Mills Company v. Commissioner, supra, it is said that neither the government nor the taxpayer has "the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Under the accrual system (here in use) income is accruable in the year in which the taxpayer's right thereto becomes fixed and definite, even though it may not be actually received until a later year, while a deduction for a liability is to be accrued and taken when the liability becomes fixed and certain, even though it may not be paid until a later year. Brown v. Helvering, 291 U.S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725. And, where the transaction giving rise to a liability has occurred in an earlier year, a deduction therefor is accruable and to be taken in the subsequent year in which the liability is acknowledged and paid. Lucas v. Ox Fibre Brush Company, 281 U.S. 115, 119, 50 S. Ct. 273, 74 L.Ed. 733.

■ In the instant case the taxpayer's liability for the attorneys' fees never became fixed and certain until 1936 by virtue of the terms of the contract. This is obviously so, for it was not until January 6, 1936, that it was first known whether or not there would be any fees payable under the contract, and it was not until the matter of the taxpayer's voluntary refunds to its customers was terminated that the amount of the fees could be ascertained. Under the rules applicable to the authority of the Security Flour Mills case, it follows that the fees which the taxpayer paid its attorneys in 1936 were not lawful accruals for 1935 and that the Board consequently erred in overruling the Commissioner's disallowance of them as a deduction from the taxpayer's gross income for 1935.

The suggestion that the possible minimum liability for fees could have been estimated for accrual in 1935 on the assumption that the taxpayer would refund to its customers the whole of the processing taxes which it had received is sufficiently answered by the fact that even to that extent there was no definite liability on the part of the taxpayer until January 6, 1936. Not possibly can it be said that the taxpayer's liability for fees was either so certain in fact or so ascertainable in amount as to justify their deduction before the liability therefor had been absolutely realized, under any recognized exception to the rule. Cf. Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

The decision of the Board of Tax Appeals is reversed.