**FOURTH AVE. AMUSEMENT CO. v. GLENN, Collector of Internal Revenue for Kentucky.**

No. 11571.

United States Court of Appeals
Sixth Circuit.

Feb. 2, 1953.

Henry J. Stites, Louisville, Ky., John T. E. Stites, Louisville, Ky., on brief, for appellant.

George F. Lynch, Washington, D. C., Ellis N. Slack and L. W. Post, Washington, D. C., David C. Walls, Louisville, Ky., on brief, for appellee.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Fourth Avenue Amusement Company brought this action in the District Court against the Collector of Internal Revenue to recover $21,776.33, which it claims was erroneously assessed against it and collected as income and excess profits taxes for the year 1940. The major portion of the assessment resulted from the disallowance by the Commissioner of bonus payments, deducted as business expenses, in the total amount of $31,980.74 made by the Company in 1940 to two of its officers for services rendered in 1936 through 1939. The Commissioner ruled that the deduction was not properly chargeable to the year 1940, which ruling is the issue involved in this appeal.

The Appellant, a Kentucky corporation, was organized in 1914 and operates a chain of motion picture theaters. Its affairs have been handled chiefly by Fred J. Dolle as President and Dennis H. Long as Secretary and Treasurer. Prior to 1923, each of these officers received an annual salary of $5,000. In 1923, the Directors passed a resolution providing that in addition to their fixed salaries, Dolle and Long should each be paid a bonus of 5% of the net profits of the Company for the year 1923 and each year following "provided the earnings are sufficient to first take care of the regular dividend of 20%." From 1923 through 1930, each of these officers received the 5% bonus. In 1931 and continuing through 1935, there were no net profits and no bonus payments were made.

On January 24, 1935, the Directors passed a resolution providing that Dolle and Long should each be paid a salary of $10,000 a

year, starting January 1, 1935, "plus the regular bonus."

On January 20, 1936, the Directors passed a resolution reelecting Dolle President and General Manager "for the ensuing year at the same salary" and reelecting Long as Secretary and Treasurer "for the ensuing year at the same salary as heretofore." There was no reference to a bonus.

During the year 1936, the Directors authorized a bond issue as of April 15, 1936 in the amount of $113,000 with the provision that until the principal of all the bonds and the accumulated interest thereon should be paid in full, "the Company should not be permitted to and would not declare any dividends upon the stock of the Company, and further that the salaries of the officers shall not be increased over and above the amounts allowed to them as of April 15, 1936." The bonds were revenue bonds and when issued contained this provision: "Until the principal of all this bond is paid in full * * * nor shall the Company increase the salary of any officer of the Company over the present salaries now paid to the officers of the Company." As of April 15, 1936, Dolle and Long were receiving a salary of $10,000 per year.

On January 18, 1937, the Directors reelected Dolle President and Long as Secretary and Treasurer, with the resolution providing that each should receive a "salary of $10,000 per year, plus the regular bonus, which bonus will not be paid however until after the bonds and accruing interest has been retired in full."

On January 17, 1938, the Directors reelected Dolle as President and General Manager and Long as Secretary and Treasurer "for the ensuing year at the same salary." No reference was made to a bonus.

On January 16, 1939, the Directors reelected Dolle as President and General Manager and Long as Secretary-Treasurer. This resolution made no reference to either salary or bonus.

The Company made substantial profits in 1936, 1937 and 1938, but no bonus was paid during those years to either Dolle or Long. The Company regularly employed the method of accounting known as the accrual basis in reporting its net and taxable income, but no book entry was made by the Company's certified public accountants of any obligation or accrued liability with respect to a bonus during the years 1936, 1937, and 1938.

The Company also made substantial profits in 1939. On December 15, 1939, the bonds and accrued interest were paid in full. On December 27, 1939, the Directors declared a dividend of seventy-five cents per share, and upon being reminded by its attorney that Dolle and Long were entitled to payment for their arrears in salary since the bonds had been retired, the minutes recited that the Directors expressed their appreciation to Messrs. Dolle and Long "and cheerfully agreed that such arrears in salary must be as promptly as possible paid." A resolution was passed which provided that "the Company recognize the indebtedness to Messrs. Dolle and Long covering the bonus due them for earnings during the years 1936, '37, '38 and '39; * * * as part payment on such arrears in salaries * * * the Treasurer is directed to immediately issue the company's check to each of them in the sum of $5,000 on account of such arrears, each check to be for the sum of $5,000 and dated December 27th, 1939." The resolution also directed Long and the Company's accountants to prepare a statement for submission to the Directors at the February 1940 meeting showing the cash position of the Company so that the Directors could arrange to pay the "entire arrears in salary to Messrs. Dolle and Long at the earliest possible date which will not impair this Company's cash position, bearing in mind the risks and hazards of the motion picture business."

The checks for $5,000 each were issued to Dolle and Long and the $10,000 taken as a business expense in the income tax return for 1939. No entry was made on the Company's books in 1939 of any obligation or accrued liability for any bonus in addition to the $10,000 so paid. The Company's certified public accountant in making the annual audit for 1939 inserted a footnote to the balance sheet which stated

that no provision was made therein for such liability as may exist by reason of certain bonus contracts mentioned in the corporate minutes, because (1) there was need for clarification as to the proper basis for compensation of bonus salaries due, and (2) the exact amounts due could not be calculated until settlement of the various income tax claims then pending against the Company, as set out in the audit. With reference to the bonus arrangement the footnote referred to the use of the words "regular bonus" without further definition, reviewed the corporate resolutions starting with 1923, gave the interpretation which the accountant placed upon the resolutions and concluded that under the circumstances either the ultimate income tax liability must be estimated or final calculation of bonuses due must be deferred until such time as the tax liability was ascertained. It also suggested that the matter of bonus contracts was rather indefinite and that it would be well to again bring the matter before the Directors for interpretation. The accountant testified at the trial that in the opinion of his firm the resolution and the so-called regular bonus were entirely too indefinite for them to attempt any setting up of any liability, that they couldn't have computed the amount of the bonus at any time until the Directors clarified what they meant, that beginning with the year 1923 no bonus was ever accrued as an expense in the year in which the profit was earned upon which the bonus was paid, that it was the consistent practice of the Directors to wait until they had received the annual audit report and then award the bonus in a specific amount, that the Company never recognized the obligation on its books until the Directors had specifically approved it in the year following the year to which it applied, and that after the accountants figured the "bonus," it was always changed by the Directors and never paid in the amount computed by them.

In December of 1939, the Company was faced with a federal deficiency income tax claim of approximately $75,000, which was settled in July 1940 for approximately $17,000. In March 1939, the Company was made a defendant in an anti-trust suit which sought damages in the approximate amount of $876,000. This suit was settled in the latter part of 1940.

Although the Directors and Dolle and Long agreed that their bonus was on a ten percent basis, there was considerable difference between the Directors and Stockholders on the one side and Dolle and Long on the other side about the items to be used in determining the net profit upon which the bonus would be calculated. Dolle and Long did not agree to the interpretation placed upon the corporate resolutions by the accountant. Extensive negotiations followed the Directors' meeting of December 27, 1939 involving such questions as whether the bonus was to be computed before or after state and federal income taxes, and whether before or after the payment of $30,000 in dividends, whether net income included income from invested bonds, a dividend in 1936 of $20,000 from the Western Indiana Theatre Company, the discount resulting from the purchase and retirement of some of the Company's bonds, a management fee of $6,600 received in 1939 from the Greater Indianapolis Amusement Company, and whether there was to be charged against income in computing the bonus basis a non-operating loss resulting from the closing of certain theatres. A settlement was ultimately reached in the latter part of 1940, which placed the net profits of the Company for 1936, 1937, 1938, and 1939, for the purpose of computing the bonus, at $419,807.51, with a resulting bonus of $41,980.75, subject to the credit payment of $10,000 in December 1939.

At a meeting of the Directors on December 17, 1940, the following occurred, as shown by the minutes: "Mr. Reutlinger inquired of Mr. Kerr regarding the indebtedness due Messrs. Dolle and Long for services during 1936, '37, '38 and '39, payment of which had been withheld under the agreement with Fidelity and Columbia Trust Company during the life of the earning bonds. Mr. Kerr stated that with the assistance of Messrs. Escott, Grogan and Company, accountants, and Mr. Stites, and with the approval of Messrs. Dolle and

Long the sum of $15,990.37 had been agreed upon as the amount due to each. Thereupon, on motion by Mr. Reutlinger, seconded by Mr. Stites, the resolution was unanimously carried as follows:

"Now, therefore, be it resolved that this company now definitely acknowledged its indebtedness to Fred J. Dolle and Dennis H. Long in said sum of $15,990.37 to each of them, and hereby assumes liability therefor, and directs its officers to promptly pay same out of its cash funds."

These amounts were paid to Dolle and Long and taken as deductions for business expenses in the Company's income tax return for 1940. They were disallowed by the Commissioner with a resulting deficiency assessment which the Company paid and now seeks to recover by this action.

Section 23, Internal Revenue Code, 26 U.S.C.A. § 23, provides that in computing net income there shall be allowed as deductions all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered.

Appellant relies upon Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L. Ed. 733, in which the Supreme Court held that bonuses paid to employees in a later year for services rendered in prior years was properly chargeable as a business expense deduction for income tax purposes in the year in which paid. The appellee relies upon American Snuff Co. v. Commissioner, 6 Cir., 93 F.2d 201, which, while recognizing the rule in Lucas v. Ox Fibre Brush Co., supra, held that in the case of a taxpayer which kept its books on an accrual basis the rule was not applicable when a legal obligation to pay the bonus existed *prior* to the year in which the bonus was actually paid. In such a case the taxpayer must take the deduction in the year in which the obligation arose or accrued rather than in the year in which it was paid. The District Judge upheld the contention of the appellee, it being his view that the bonus arrangements in the present case constituted contract liabilities against

the Appellant in the years prior to 1940, even though the exact amount of the bonus was not ascertained and was not paid until 1940.

The question involved in the present case is accordingly whether the bonus payments in 1940 for the years 1936 through 1939 became accrued obligations of the Company prior to the year 1940 in which they were paid. We are of the opinion that they did not become accrued liabilities of the Company prior to 1940 and that the case is accordingly controlled by the ruling in Lucas v. Ox Fibre Brush Co., supra, rather than by the ruling in American Snuff Co. v. Commissioner, supra.

 Under the bond issue of April 15, 1936, the Company obligated itself not to increase the salaries of the officers above the amounts which were being paid at that time, which under the resolution of January 20, 1936 was $10,000 for each of the two officers herein involved. That resolution made no reference to a bonus and no bonus had been paid in the preceding year of 1935. Since the bonds were revenue bonds, payable out of the income of the Company, it would have been a violation of the Company's contractual obligation with its bondholders to have created, while the bonds were outstanding, a bonus liability chargeable against income, even though the actual payment of such an obligation be deferred until a later time. Such an accrued liability would have reduced the security of the bond by thus reducing the net income as shown by the Company's books, available for payment of the principal and interest of the bonds. A mortgagee is entitled to injunctive relief to prevent the unauthorized impairment of the value of the mortgaged security. Waterman v. Mackenzie, 138 U.S. 252, 259, 11 S.Ct. 334, 34 L.Ed. 923; See Annotation 48 A.L.R. 1156. It would seem that the bonus provision contained in resolution of 1923, as reenacted in 1925, was terminated by the salary resolution of January 20, 1936, which made no provision for a bonus. In addition the provisions of the bond issue of April 15, 1936 made it clear that no bonus liability was thereafter legally accruing in 1936 and subsequent thereto.

Following payment in full of the bonds on December 15, 1939, the Company was in position both financially and legally to compensate Dolle and Long for their past services, and it put in motion the necessary proceedings to accomplish this result by its resolution of December 27, 1939. In our opinion, that resolution in itself did not create an unconditional obligation in a fixed amount on the part of the Company to the two officers, other than in the amount of $10,000 actually paid at that time. Although the resolution by its wording recognized "the indebtedness" to Dolle and Long for the 1936 through 1939 bonuses, there was legally no existing indebtedness for the Company to recognize. The general reference in the resolution to the resolutions fixing compensation for the years 1936, 1937, 1938 and 1939 results in a very confusing picture. In 1936 and 1938, Dolle and Long had been reelected "at the same salary" with no provision for a bonus. In 1937, the resolution provided a salary of $10,000 "plus the regular bonus," without defining "regular bonus," and in spite of the fact that there had been no bonus, regular or otherwise, since 1930. In 1939, the resolution made no provision for either salary or bonus. We are of the opinion that the correct interpretation of the resolution is that the Company recognized the inadequate compensation which the two officers had received during those four years, and the moral obligation on its part to meet that obligation as promptly as possible, realizing, however, that certain existing factors had to be considered before a final bonus could be determined and paid. This is supported by the Directors' action in postponing final action on the bonus until the February 1940 meeting and in not giving official approval to the amount of the bonus and directing its payment until the meeting held on December 17, 1940. The resolution passed at that meeting stated—"Now, therefore, be it resolved that this Company *now definitely* acknowledge its indebtedness * * * in said sum of $15,990.37 to each of them, and *hereby assumes liability* therefor, and directs its officers to promptly pay same out of its cash funds." (Italics added.) This was in accord with the consistent practice of the Company in previous years in not officially recognizing any bonus obligation until after the final audit and the amount to be paid, adjusted by the Directors in the exercise of their discretion, was officially approved.

▄▄ It is well settled that a taxpayer may not accrue an expense the amount of which is unsettled by reasons of transactions not yet completed or the liability for which is contingent. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 284, 64 S.Ct. 596, 88 L.Ed. 725. A liability does not accrue within a given taxable year unless the final event which fixes the amount and determines the liability of the taxpayer to pay occurs within that year. Block & Kohner Mercantile Co. v. United States, 8 Cir., 37 F.2d 877; S. Naitove & Company v. Commissioner, 59 App.D.C. 53, 32 F.2d 949, 952; Pierce Estates v. Commissioner, 3 Cir., 195 F.2d 475, 477; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 420; Brown v. Helvering, 291 U.S. 193, 200, 54 S.Ct. 356, 78 L.Ed. 725; Desco Corp v. United States, D.C., 55 F.2d 411, 413. Also a liability, contingent upon the result of disputed claims or pending litigation does not accrue until the issue has been settled or adjudicated. Lucas v. American Code Co., 280 U.S. 445, 450–451, 50 S.Ct. 202, 74 L.Ed. 538; Dixie Pine Products Co. v. Commissioner, supra. In the present case, the net profits of the Company would be materially affected by the final result of the pending tax claims and the anti-trust litigation, both of which were pending at the close of 1939, and which the Company wanted out of the way before assuming bonus obligations.

▄ Between December 27, 1939 and December 17, 1940, the amount of the bonus was an unsettled matter. The correct interpretation of the so-called bonus contract was in dispute. Several material factors substantially affecting the amount of the bonus were also being negotiated by the parties, who had disagreed with respect thereto. Until these matters were finally adjusted between the parties the amount of the bonus liability was contingent and uncertain. This contingency and

uncertainty was recognized by the resolution of December 17, 1940 which stated that by reason of the negotiations between the parties following the meeting of December 27, 1939, "the sum of $15,990.37 had been agreed upon as the amount due to each" and for which amount the Company "hereby assumes liability therefor." We agree with the view expressed by. the certified public accountant that in view of the indefinite wording of the various bonus resolutions, the absence of any agreed formula under which the bonus could be computed, the disputed issues between the parties, the unsettled income tax liability, the pending anti-trust suit, it was impossible under correct accounting principles to set. upon the books of the Company for the year 1939 any accrued bonus liability. Security Flour Mills Co. v. Commissioner, supra, 321 U.S. at page 284, 64 S.Ct. 596, 88 L.Ed. 725.

A somewhat similar question was before this Court in Bauer Bros. Company v. Commissioner, 6 Cir., 46 F.2d 874, certiorari denied 283 U.S. 850, 51 S.Ct. 560, 75 L.Ed. 1458, where the Court held that although the taxpayer had decided before the end of 1918 that bonuses would be paid to certain employees, together with the amount to be paid to each employee, and the employee had been informed that he would receive a bonus, yet the obligation to pay the bonus was not incurred until the succeeding year, at which time the taxpayer officially recognized the obligation and directed its payment. See also Kentucky & Indiana Terminal R. Co. v. Commissioner, 6 Cir., 54 F.2d 738. In Imperial Type Metal Co. v. Commissioner, 3 Cir., 106 F.2d 302, the Court held with respect to a bonus paid by an employer who kept his books on the accrual basis that the liability for the bonus was not incurred unless and until the Board of Directors ordered distribution and specifically designated the employees who were to receive the payments. See also Commissioner v. Blaine, Mackay, Lee Co., 3 Cir., 141 F.2d 201, 203; Skinner Mfg. Co. v. United States, 8 F. Supp. 741, 745–746, 80 Ct.Cl. 137.

The judgment is reversed and the case remanded to the District Court for entry of judgment in favor of the taxpayer in accordance with the ruling herein given.

MARTIN, Circuit Judge (dissenting).

I think the judgment of the district court is correct and should be affirmed. I am in accord with the conclusions of the district judge that the minutes of the directors' meetings of January 24, 1935, January 18, 1937, and December 27, 1939, make it apparent that the intention of the directors in those meetings was to abide by the directors' resolution of 1923, which provided that President Dolle and Secretary-Treasurer Long of the corporation should receive a bonus amounting to five per cent of the net profits of the company for 1923 and each year following, provided the earnings were sufficient to take care first of a regular dividend of twenty per cent; that, in the resolution of December 27, 1939, the company recognized its indebtedness to these two officers for the bonus payments due them for each of the years in question; and that there was a legal obligation to pay the bonus compensation, although the date of payment was deferred until the retirement of $113,000 of corporate bonds.

In my view, as was held by the district judge, the case falls within the ambit of the opinion of this court in American Snuff Company v. Commissioner of Internal Revenue, 6 Cir., 93 F.2d 201. There, the stockholders of a corporate taxpayer, which kept its books on an accrual basis as did the taxpayer here, adopted a resolution in 1912 providing that, for that year and each succeeding year, the president and the vice-presidents of the company should each be paid for his services—in addition to his regular salary—a certain percentage of any profits earned by the company for the year in excess of those earned by it in 1911. The additional compensation stipulated was not paid in full, however, as a result of improper computation of the net profits by the treasurer of the company. This court held that the resolution constituted a subsisting agreement which, upon performance, became a legal obligation of the corporation; from which the conclusion was drawn that the amount of the unpaid compensation to

the corporate officers, paid in 1928, was not deductible as an expense incurred in that year in computing income for 1928.

Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, was distinguished, for the reason that "in that case there was no prior agreement or legal obligation to pay the salaries at the time the services were rendered." [93 F.2d 202.] Moreover, the directors' resolution in the Lucas case explicitly stated that the extra compensation was voted to the officers for *past* services. Among those past services had been personal guarantees by the officers of bank loans of considerable amounts to the corporation. The Supreme Court pointed out that, prior to the administration by the officers to whom the extra compensation was granted, "the business of the corporation had been in a chaotic state and had been conducted at a loss"; that the net result brought about by the officers had effectuated a change from an operating loss of some four thousand dollars in 1908 to net earnings of some $150,000 in 1920; that both cash and stock dividends had been paid to the stockholders; and that the net income of the company in 1920 (the year in which the extra compensation was allowed), after deducting all expenses, represented a return of 21.13% on its invested capital; and that the "corporation had advanced to a leading place in the brush trade." In view of these considerations and of the salaries paid the officers, additional compensation of $24,000 to them was held to be deductible as a reasonable payment in the year paid. Here, we find no similarity in facts to those described in the Lucas case.

The words used by this court in Ohmer Register Co. v. Commissioner of Internal Revenue, 6 Cir., 131 F.2d 682, 686, 143 A.L.R. 1164, seem directly applicable here: "The essence of the accrual method of keeping accounts and making returns is that the right to receive and not the actual receipt determines whether an amount should be included in gross income. The right accrues when the right to receive the amount becomes fixed. Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184, 54 S.Ct. 644, 78 L.Ed. 1200. Correspondingly, the right to deduct an expense item accrues when the fixed obligation is incurred, even though the amount may be diminished by subsequent events. Both sides of the ledger must be treated alike. Bonded Mortgage Co. of Baltimore v. Commissioner of Internal Revenue, 4 Cir., 70 F.2d 341."