## BONDED MORTGAGE CO. OF BALTIMORE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3560.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

Reuben Oppenheimer and John H. Skeen, both of Baltimore, Md. (Bernard R. Youngman, of Baltimore, Md., on the brief), for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The question presented by this petition to review the decision of the United States Board of Tax Appeals involves the proper income tax accounting of the Bonded Mortgage Company of Baltimore, a Maryland corporation, for its fiscal years ending June 30, 1926 and 1927, and raised under the Revenue Act of 1926 (44 Stat. 9).

As its name indicates, the taxpayer was engaged in the business of loaning money on mortgage security and selling to the public its own bonds or notes secured by these mortgages. The interest rate charged by it for the money loaned on mortgages was 6 per cent., and the same interest rate was paid by it on its own notes. Outside of its paid-in capital stock, the moneys obtained by it to make mortgage loans were derived from the sale of its own notes or bonds. It was, therefore, at the same time borrowing and loaning money, that is, in substance, dealing with money as a commodity. In addition to the annual interest rate charged to the borrowers from it on mortgage security, the company also charged a flat commission for making the loan which varied from 2 per cent. to 5 per cent. of the principal dependent upon the duration of the loan. And in selling its own obligations, the company incurred the expense of paying a commission or brokerage fee to the banking institution which sold the company's bonds or notes to the public, which varied in amount from ½ per cent. to 6 per

cent. of the principal (the bonds or notes being in all cases sold at par), dependent upon the respective maturities which varied from one to ten years, and also made certain annual premium payments to a surety company which guaranteed the mortgages. As this was its only business, and as the interest charged and paid on the money borrowed and loaned by it respectively was the same, it is apparent that its income accounting was concerned principally with these commissions received by it, as income, and the expenses referred to as out-go.

In the audit of the taxpayer's returns for 1926 and 1927, the Commissioner determined that the total amount of commissions received in a taxable year should be treated as income for that year, but at the same time determined that the expenses must be prorated over the entire life of the bonds or notes sold and were deductible in the year actually paid only to the extent applicable to that year as so prorated. Pursuant to this basis of income tax accounting the Commissioner determined that there was a deficiency in the taxpayer's return of taxes for the year 1926 in the amount of $2,177.42, and for 1927 of $69.50. The taxpayer duly appealed to the Board of Tax Appeals where the case was heard on a stipulation of facts without other testimony; and the Board fully sustained the Commissioner in an opinion reported in 27 B. T. A. 965.

The taxpayer's principal contention here is that the treatment of its income and out-go must be similar; that is, if commissions received by it are wholly taxable in the year in which received without proration over the whole term of the mortgages, then the taxpayer's expenses in borrowing the money which constituted the fund from which the mortgage loans were made by it, must similarly be deducted for the year in which they were actually paid, without proration over the period of years for which the money was borrowed; or, in other words, that both sides of the taxpayer's ledger must be treated alike; and the taxpayer professes comparative indifference as to whether, if both sides of the ledger are treated alike in the income tax accounting, the proration method or the flat charge method is adopted. The taxpayer's returns as first made were on the basis of charging itself with all commissions received as income and crediting itself with all expenses incurred and paid, in any one year, as ordinary and necessary expenses of the business. But in amended returns subsequently filed, the taxpayer prorated both its

income and expenses. It is stated that the taxpayer's books were kept on the accrual, and not cash, basis. The questions now presented for our determination are (1) whether the Commissioner and Board were justified in prorating the expenses but not the commissions; and (2), if not, then should both or neither be prorated.

We are clearly of the opinion that the taxpayer's main contention is sound. Both sides of its ledger must be treated alike; otherwise its true income will not be reflected by the accounting. Assuming that the total commissions received should be treated as income for a particular year, the deductions allowed corporations in the Revenue Act of 1926 are to be found in section 234 of the Revenue Act of 1926 (44 Stat. Part 2, p. 41, 26 USCA § 986) reading as follows: "(a) In computing the net income of a corporation subject to the tax imposed by section 230 [section 981 of this title] there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." And by section 232 of the same act (26 USCA § 984), it is provided: "The net income shall be computed on the same basis as is provided in subdivisions (b) and (d) of section 212 [section 953] or in section 226 [section 968]." And section 212 (b), 26 USCA § 953 (b) provides: "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

It will thus be noted that while the law does not determine the precise method of the taxpayer's bookkeeping (whether cash or accrual basis) it is required as a fundamental principle that the method employed must clearly reflect the income. In applying a similar provision of the Revenue Act of 1918, the Supreme Court in United States v. Mitchell, 271 U. S. 9, at pages 12, 13, 46 S. Ct. 418, 419, 70 L. Ed. 799, by Mr. Justice Butler, said: "Notwithstanding the option given taxpayers, it is the purpose of the act to require returns that clearly reflect taxable income. That purpose will not be accomplished unless income received and deducti-

ble disbursements made are treated consistently. It was not the purpose of the act to permit gross income actually received to be diminished by taxes or other deductible items disbursed in a later year, even if accrued in the taxable year. It is a reasonable construction of the law that the same method be applied to both sides of the account."

And with regard to the similar provision of the Revenue Act of 1916, Mr. Justice Stone said in United States v. Anderson, 269 U. S. 422, at page 440, 46 S. Ct. 131, 134, 70 L. Ed. 347: "It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis."

And the same principle in income tax accounting was likewise applied by the Supreme Court in American National Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946; and by the Second Circuit Court of Appeals in Eckert v. Commissioner, 42 F.(2d) 158, 159, affirmed 283 U. S. 140, 51 S. Ct. 373, 75 L. Ed. 911. See, also, Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733. If, as illustrated by these cases, the taxpayer is not permitted to adopt inconsistent methods of bookkeeping for income and expenses respectively, neither is the Commissioner. The principle is so entirely just and the law so plain that the point needs no further elaboration.

It remains to be determined whether or not both the income and expenses of this taxpayer should be prorated. Counsel for the taxpayer argue that the proration of both items is preferable as well as permissible. And there are some considerations that tend to support that view. Thus it may be observed that the commissions said to have been paid on the mortgage loans made were only paid in the sense that the amount of the commission was deducted from the face of the loan, thus diminishing the amount actually advanced to the borrower; and that in economic substance the commission being payable to the lender itself really represented only additional interest, the actual receipt of which was dependent upon the final payment of the mortgage debt when due; and therefore in income tax accounting it should, by analogy, be treated like bond premiums which, by Treasury Regulations (69, art. 545, relating to the Revenue Act of 1926), must be prorated or amortized over the life of the bonds. See Western Md. R. Co. v. Commissioner (C. C. A.) 33 F.(2d) 695, 696; San Joaquin L. & P. Corp. v. McLaughlin (C. C. A.) 65 F.(2d) 677, 679; Chicago, Rock Island, Pac. R. Co. v. Commissioner, 13 B. T. A. 988. It may also be said that, as the life of the mortgages received by the taxpayer and its own issued obligations varied in duration, the proration of the commissions received for making the mortgage loans and the expenses incurred for selling the taxpayer's obligations, over the respective periods of each, would more scientifically reflect the income per year for the whole period of years involved than the charging of all commissions and expenses incurred in a particular year, at least in the sense that the amount of net income for the several years would be more nearly uniform. As the statute gives the option to the taxpayer to adopt his own form of bookkeeping provided only it truly reflects the income, it may be arguable that if the taxpayer in this case had originally adopted and consistently held to the method of prorating both its income and expenses, that method should have been adopted and approved by the Commissioner.

There are, however, countervailing considerations, which on the whole we deem weightier, to support the view that the whole amount of the commissions received by the taxpayer should be treated as income for the year in which received. As already stated, this is in fact what was done by the taxpayer in his original bookkeeping (said to have been on the accrual basis), and this is the method which has consistently been followed by the Treasury Department for many years under several Income Tax Acts (see S. M. 3829, IV-2 Cumulative Bulletin, 32, 34) in the treatment of commissions of this character, as distinguished from the amortized bond premiums under Treasury Regulations 69, article 545, above mentioned; and has been applied in a number of cases, including the present, by the Board of Tax Appeals. Columbia State Savings Bank v. Com'r, 15 B. T. A. 219, affirmed 41 F.(2d) 923 (C. C. A. 7); North-Western Trust & Savings Bank v. Com'r, 20 B. T. A. 365. The Supreme Court apparently approved the same treatment of similar commissions in American National Co. v. United States, 274 U. S. 99, 103, 47 S. Ct. 520, 71 L. Ed. 946, and expressly ruled that commissions of a somewhat different nature (overriding commissions received by an

insurance agent on premiums on three and five year term policies, which were subject to proportionate refunds on cancellation in years subsequent to the particular tax year) were wholly taxable in the year received. Brown v. Helvering, Commissioner, 54 S. Ct. 356, 361, 78 L. Ed. —— (decided January 15, 1934). See, also, Old Colony R. Co. v. Commissioner, 284 U. S. 552, 52 S. Ct. 211, 76 L. Ed. 484; Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 52 S. Ct. 529, 76 L. Ed. 1111. As the practice has been of long standing in the Treasury Department and approved by judicial decisions, and has the added merit of greater simplicity in income tax accounting, we do not think the action of the Commissioner and the Board in adhering to it in this instance should be disturbed (Old Colony R. Co. v. Commissioner, 284 U. S. 552, 557, 52 S. Ct. 211, 76 L. Ed. 484; Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010) by reason of circumstances which in this particular case may tend to support, on a theoretical basis, a different accounting method. "It is not the province of the court to weigh and determine the relative merits of systems of accounting." Brown v. Commissioner, supra.

It follows that, as the whole of the commissions must be treated as earned income in the particular tax year, the whole of the expenses which were here prorated by the Commissioner, consisting of commissions charged by the bank for selling the taxpayer's obligations, and the premium charges paid to the surety company, must also be wholly deducted from income without proration. So far as the premiums alone are concerned, it is difficult to see how there can be any question because the stipulation of facts shows that the charges were made by the bonding company on an annual basis and paid monthly by the taxpayer. And as the bankers' commissions paid are precisely of the same nature as the commissions charged by the taxpayer constituting its income, there is certainly no reason to treat the two items differently on sound accounting principles.

 It is, however, argued here by counsel for the Commissioner that what was in fact done in the audit of the return, was not an inconsistent treatment of the debit and credit sides of the taxpayer's ledger, but that the Commissioner really determined that the surety premiums and bankers' commissions paid by the taxpayer were disallowed as "ordinary and necessary expenses" of the business, and that the action of the Commissioner in allowing the proration of these expenses was really an act of grace or liberality to the taxpayer not required by the law although allowed in practice. We fail to find in the record any basis for this contention. Obviously the Commissioner and the Board in allowing the deduction of a part, although not the whole, of the expenses for any one year, cannot be said to have acted on the basis of disallowing the item as an ordinary and necessary business expense. Nor can we find any justification for the view that the expenses so deducted are not permissible deductions under the language of the statute, which, of course, is to be read and applied in its natural and common meaning. Welch v. Helvering, 290 U. S. 111, 114, 54 S. Ct. 8, 78 L. Ed. 212. Support for the contention is sought in the supposed analogy of an ordinary corporate bond issue to raise additional capital, the expenses of which, in the case of discount on the bonds sold, are generally required to be prorated or amortized over the life of the issue and are not allowed to be wholly deducted as an ordinary and necessary expense for the particular year; while necessary, they are extraordinary. But the supposed analogy completely fails when the nature of this particular taxpayer's business is understood. The sale of its bonds and notes was admittedly necessary and in no sense extraordinary. On the contrary, it was inherent in the very nature of its business which consisted almost entirely in borrowing and lending money and thus really dealing in money as a commodity. And in our opinion the error of the Commissioner and of the Board lies in the failure to appreciate and give effect to this essential feature of the taxpayer's business which directly affects its income tax accounting. We hold, therefore, that the items of expense in question in this case were wholly deductible in the year in which they were incurred and paid and should not have been prorated or amortized over a longer period.

And for these reasons the determination of the Board is hereby reversed, and the case remanded.