### CITIZENS' NAT. BANK OF ORANGE v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 3692.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

Theodore B. Benson, of Washington, D. C., for petitioner.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, and involves a deficiency in the petitioner's income tax in the sum of $681.19 for the year 1930. The decision of the Board of Tax Appeals was entered in January, 1934.

There is no disagreement as to the facts involved, as the issue was submitted to the Board on an agreed stipulation of facts. The petitioner is a national bank engaged in business at Orange, Va. Throughout the calendar year 1930 the bank carried in an account entitled "Bonds to Secure Trust Deposits" a certain number of domestic and foreign bonds. At the close of the year 1930, under instructions given by the national bank examiner, the bank wrote down the values of said bonds as carried on its books in the total sum of $5,525. This writing down or charge off was ordered by the national bank examiner, for the reason that the market values of said bonds had declined materially, and even after the charge off the market value of each of said bonds was materially less than the reduced book value. At the close of the year 1930, none of said bonds was in default, and the petitioner had no definite information that any of said bonds would not be collected at maturity.

The petitioner deducted said amount of $5,525 in its income return for the year 1930, and the Commissioner of Internal Revenue disallowed the deduction. The Board of Tax Appeals affirmed this action of the Commissioner.

Section 23 (j) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 799 (26 USCA § 2023 (j), provides as follows:

"Sec. 23. *Deductions from Gross Income*

"In computing net income there shall be allowed as deductions: * * *

"(j) *Bad Debts*. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

Article 191 of Treasury Regulations 74 provides in part as follows:

" * * * Where all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. Any amount subsequently received on account of a bad debt or on account of a part of such debt previously charged off and allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received. In determining whether a debt is worthless in whole or in part the Commissioner will consider all pertinent evidence, including the value of the collateral if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only.

" * * * Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders, or in accordance with the general policy of such supervisory officers, charge off debts in whole or in part, such debts shall, in the absence of affirmative evidence clearly establishing the contrary, be presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be."

Article 194 of Regulations 74 is in part as follows:

"Worthless Securities.

" * * * A taxpayer (other than a dealer in securities) possessing debts evidenced by bonds or other similar obligations cannot deduct from gross income any amount merely on account of market fluctuation. Where a taxpayer ascertains, however, that due, for instance, to the financial condition of the debtor, or conditions other than market fluctuation, he will recover upon maturity none, or only a part, of the debt evidenced by the bonds or other similar obligations and so demonstrates to the satisfaction of the Commissioner, he may deduct in computing net income the uncollectible part of the debt evidenced by the bonds or other similar obligations."

The question presented, as stated by the Board of Tax Appeals in its opinion, is "whether the direction of the national bank examiner to write down bonds, is sufficient, under the law, to entitle a taxpayer to take as a deduction in its return the amount of the write-down so ordered."

Here we have a case in which one branch of the government can compel the taxpayer to take an action with regard to its securities which, when taken, will not be recognized by another branch of the government. This is not fair to the taxpayer. There should be at least some semblance of co-ordination between the several branches of the government in dealing with a taxpayer. It is immaterial as to what reason the bank examiner gave for ordering the charge off. His determination that the bonds were worthless in part was sufficient. The bank was under the necessity of complying with the instructions given, and it seems only reasonable that the bank should be allowed, in its return for the purposes of taxation, a deduction, corresponding in amount to the charge off made under compulsion. Otherwise the bank would be compelled to keep two sets of books, one, as directed by the bank examiner, and the other for the purpose of making its tax return. As we said in the case of Bonded Mortgage Co. v. Commissioner, 70 F.(2d) 341, both sides of the ledger must be treated alike. The statement in the stipulation of facts that, even after the charge off the market value of the bonds was materially less than the reduced book value would tend to establish the taxpayer's right to a deduction in its return.

It is contended on behalf of the respondent that no evidence was introduced as to the partial worthlessness of the bonds, but we find that article 191 of Regulations 74, quoted above, gives to the taxpayer the benefit of the presumption that, to the extent of the charge off, the debt is worthless, when the charge off is made in accordance with specific orders, as is the case here. In the regulations the burden is thrown upon the respondent to establish the contrary.

It is admitted that a bond is a debt, and it is so treated in article 194 of Regulations 74 above quoted. Taking judicial cognizance of conditions that existed in the year 1930 in the financial world, there is no doubt that, at least, to the extent of the charge off ordered by the bank examiner, the debt was worthless and should be al-

lowed as a deduction. This conclusion is supported by the stipulation of facts.

A discussion of certain phases of the question here involved will be found in Commonwealth Commercial State Bank v. Lucas, 59 App. D. C. 317, 41 F.(2d) 111.

The case of Broadway Savings Trust Co. v. United States, 66 Ct. Cl. 429, relied upon on behalf of respondent is not in point, for the reason that in that case the facts were different from those shown here.

It is also contended on behalf of the respondent that fluctuations in the market values do not justify deductions, and with this contention we agree, but here the deduction was not made by the bank because of market fluctuations but because of the order of the bank examiner, and, as we stated above, it is immaterial what reason the bank examiner gave for his action. The bank was, in any event, obliged to followed the examiner's orders.

The petitioner should be allowed the deduction, and the decision of the Board of Tax Appeals is accordingly reversed.