UNITED STATES v. BECKMAN, Secretary of Banking of Pennsylvania.
No. 6851.

Circuit Court of Appeals, Third Circuit.
May 9, 1939.

Rehearing Denied June 16, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for the United States.

Harry C. Liebman, of Philadelphia, Pa., for appellee.

Before MARIS and CLARK, Circuit Judges, and KALODNER, District Judge.

CLARK, Circuit Judge.

This case was tried in the court below under a misunderstanding. Not unnaturally, what we deem to be error occurred. Counsel for the taxpayer-appellee very fairly concedes and accounts for this misapprehension of the learned trial judge in the following language in his brief:

"It is conceded that such finding of a charge-off is contrary to the Agreed Statement of Facts (R. p. 18) in which it was stated that the taxpayer had failed to charge-off on its Records any part of the loss sustained by it on the Bradford Bank debt. It is possible that such fact finding was arrived at by the lower Court from the fact that the Board of Directors of the plaintiff on December 23rd, 1930 by resolution resolved to comply with the direction of the Secretary of Banking (R. 14i, 14j) relating to the writing off of the Bradford bank debt. However, it is admitted that a charge-off was not formally made on the books of the plaintiff and that a finding to the contrary is in opposition to the Agreed Statement of Facts. Moreover suit was instituted herein upon the theory that the plaintiff had sustained a partial loss on the Bradford Bank debt in an amount sufficient to eliminate any taxable income for the year 1930 and that the Commissioner had abused his discretion in disallowing such a claim. Accordingly it is submitted that inasmuch as the Court below made pertinent findings of fact supported by the evidence relating to the issue joined in the pleadings, which findings of fact are sufficient to sustain the judgment herein, the aforesaid additional finding of fact now discussed is unrelated to the issue joined by the parties hereto and is at most harmless error and should not affect the general finding in favor of the plaintiff". Appellee's brief, pp. 17, 18.

The confusion arises from the somewhat misleading similarity between two cognate provisions of the Revenue Act of 1928, § 23 (j), 26 U.S.C.A. § 23 (j) note, p. 130. Both cover the general subject of deductions for so-called bad debts. We can best describe their respective operation in the words of our judicial brethren of the Sixth Circuit: "This statute deals with two classes of debts: Those that have become wholly worthless, and those recoverable only in part. It makes provision for the deduction of each from gross income, providing as to the first that, when 'ascertained to be worthless and charged off,' a deduction therefor 'shall be allowed'; and as to the second, that, when 'satisfied that a debt is recoverable only in part the Commissioner may allow such debt to be charged off in part.' The allowance as to each class depends on the performance of a precedent act or acts. Those in the first are the ascertainment of worthlessness and the charging off, which must be done by the taxpayer, subject, of course, to the review of the Commissioner as to the reasonableness of the ascertainment." Commissioner of Internal Revenue v. Liberty Bank & Trust Co., 6 Cir., 59 F. 2d 320, 321, 322.

The opinion of the learned district judge, under the misapprehension we and counsel have spoken of, discusses the question of ascertainment throughout, saying inter alia: "The provision of the law is that a bad debt, let us keep reminded, may be deducted only when the loss has been both ascertained and charged off within the taxable year." Record, p. 37. Nevertheless, the actual issue is preserved by an appropriate conclusion of law. It reads as follows: "That the action of the Commissioner of Internal Revenue in allowing only a deduction to petitioner for a partial loss of $20,000.00 on the indebtedness of the First National Bank of Bradford to it, and disallowing the remainder of the claimed deduction in connection with the partial loss on said indebtedness was plainly arbitrary and unreasonable." Record, pp. 41, 42. And is validated by the learned district judge's "all found as requested", Record, p. 39.

■ We observe that this conclusion is anachronistically framed in the phraseolo-

gy, of the 1932 Act, 26 U.S.C.A. § 23 (k). It contemplates the discretionary allowance of a *deduction*. But the controlling language of the 1928 Act, above cited, comprehends only the discretionary allowance of a *charge-off*, Stranahan v. Commissioner, 6 Cir., 42 F.2d 729, certiorari denied 283 U.S. 822, 51 S.Ct. 346, 75 L.Ed. 1437; Commissioner v. Liberty Bank & Trust Co., above cited.

■ The narrow instance of this case is no place for an elaborate philosophical or legal discussion of the process of decision, whether that process be judicial, administrative, or personal. Suffice it to say that the exercise of judgment is the exclusion of its antonym, whimsy. Hartrampf's Vocabularies, p. 113. In the words of the Supreme Court quoted by the recently issued (1938) American Jurisprudence, Vol. 14, p. 279: "When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520. See, as to judges, Langnes v. Green, above cited, Ex parte United States, 242 U. S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A. 1917E, 1178, Ann.Cas.1917B, 355, and as to administrative officers generally, Dickinson, Administrative Justice and Supremacy of the Law 192; Black, The "Jurisdictional Fact" Theory and Administrative Finality, 22 Cornell Law Quarterly 349, 515; Cooper, Administrative Justice and the Role of Discretion, 47 Yale Law Journal 577.

Many cases have considered the principle in its application to our particular administrative official, the Federal tax assessor. The earlier ones are collected in two interesting articles entitled, Finality of Determinations of the Commissioner of Internal Revenue, 28 Columbia Law Review 563; 30 Columbia Law Review 147. They point to the language of the variously worded statutory provisions—"in the opinion of the Commissioner"; "in the discretion of the Commissioner"; "with the approval of the Commissioner"; "full power to determine"; and finally, approximating the words here, "to the satisfaction of the Commissioner", pp. 565 and 162 respectively of the articles above cited. The learned author, Mr. Roswell Magill, in his second article sums up our problem in this wise:

"The second class of cases are those involving sections of the law which make certain determinations depend upon the discretion, belief, opinion, or satisfaction of the Commissioner. In these, the Board gives the Commissioner the benefit of a presumption of prima facie correctness; the courts seem inclined to review only on a showing of abuse of discretion. Since the Board has the duty, by the terms of the laws of redetermining the correct amount of the tax, and at least some part of the Commissioner's facilities and experience for doing so, it is believed that it has the *power* to substitute its judgment for that of the Commissioner in these cases. Its own decisions are to that effect; and the Oesterlein case points that way. In favor of the view also is the desirability of an independent review outside of the Treasury Department. The fact that the burden of proof is on the taxpayer, is, perhaps, a sufficient safeguard of the revenues.

"On the other hand, it is submitted that the courts should not in such cases overthrow the Commissioner's determination in the absence of a clear showing of failure to exercise discretion, when the duty existed, or of an abuse of discretion. The opinion of the Commissioner that the use of inventories is necessary, for example, involves an expert knowledge and a wide experience which a court does not have. Moreover, it was evidently the legislative intent to delegate the determination, administrative in character, to the Commissioner. Where a showing to the satisfaction of the Commissioner is required, it is reasonably likely that the need of administrative experience to make the determination, as well as the difficulty of exact proof, was a controlling reason for the delegation of power. A court should not lightly substitute its own judgment. But a legislative re-examination of the wording of the statutory provisions conferring powers on the Commissioner would seem to be desirable. There is some indication that the variety of phrasing was more inadvertent than intentional. If courts are to abide by the letter of the law, the law ought at least to be accurately phrased". Finality of Determinations of the Commissioner of Internal Revenue, 30 Columbia Law Review 147, 166, 167.

So many cases are cited in the articles above referred to that additional authorities seem superfluous. It may be well to conclude the legal phase of the matter by a quotation from the United States Supreme Court: "The company's case falls far short of meeting the heavy burden of proving that the Commissioner's action was plainly arbitrary. Compare Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 [67 A.L.R. 1010]; Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 559, 48 S.Ct. 587, 72 L.Ed. 985." Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 266, 74 L.Ed. 848. See also, Rhode Island Hospital Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 29 F.2d 339, 341; Kansas City Structural Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 33 F.2d 53, 57; Stranahan v. Commissioner of Internal Revenue, above cited.

■ We have even less difficulty with the facts. The taxpayer bank lent some $99,814.71 to another bank. It secured this loan with the most extreme opposite to Stock Exchange collateral that has so far, at least, come to our notice. That collateral was a license to cut timber in British Columbia granted to the debtor bank by the Canadian government. It does not appear whether or not the officials of the debtor bank were to abandon the quill for the adze (if that is the right weapon). In any event, no timber was cut and, what is more, no fee sufficient to keep the license alive after December 31, 1930, was paid.

In June, 1930, a bank examiner of Pennsylvania after examining the taxpayer bank, now itself in difficulties (and no wonder), recommended that the debt secured by this timber-right be eliminated from the assets of the bank. Before this recommendation crystallized into action, the bank's treasurer went through the all too common motions of "seeing the big fellow"—in this case, the Secretary of Banking. This interview proved fruitful. For on the next day, December 18, 1930, he received a letter from which we quote:

"After all the facts in the case were presented to the Secretary by Mr. Callender, Mr. Cameron decided that the Department would not require the entire amount to be charged off at this time, because there appears to be some possibility of at least a partial recovery.

"The Secretary of Banking requests that not less than $20,000 be charged off on or before December 31st this year, against the loans in question......... It is further understood that not less than $20,000 is to be charged off against the appraised loss herein discussed in 1931, and each year thereafter, until the entire amount is absorbed. If the present negotiations should be consummated, and the Trust Company receive payments on account of the timber cut from the tract, we may be willing to reduce the annual charge off against the account to a lesser figure or to discontinue it entirely". Record pp. 23, 24.

On December 24, Mr. Callender with increased optimism wrote the Secretary requesting that the charge off be reduced to $10,000, a request which was to be denied early in January 1931. So ended the tax year 1930. At no time during that year did the taxpayer-appellee write off the debt on its books in whole or in part, nor was the debt mentioned in its tax return. Its directors did, however, formally resolve on December 23rd, 1930, "to comply with the request of the Secretary of Banking" contained in the letter quoted above.

The taxpayer bank's representations to the Secretary of Banking (inferentially as to pending negotiations for the sale of timber) convinced the latter that there was "some possibility of at least partial recovery". And the extent of that possibility is reflected by the Secretary's direction to write off $20,000 rather than the whole amount. Though the Secretary may have been graciously inclined to temper the wind to a shorn bank, it can hardly be assumed that he would have countenanced the survival of the debt so written down as an asset, unless this course were warranted by the bank's own admissions of recoverability. Any other action on his part would have been in disregard of his duty to protect depositors from the deception inherent in the false appearance of assets. See O'Keefe v. Equitable Trust Co., 3 Cir., 103 F.2d 904, decided April 13, 1939. Nor does the obvious inference that taxpayer-appellee's statements to the Secretary were made with an eye to its balance sheet rather than its tax return detract from their force as admissions. There is no reason why declarations made in a state of tax unconsciousness should conform any less closely to reality than their opposite, and many adjudications have been based upon them. See Paul & Mertens, Law of Federal Income Taxation, Vol. 5, 1938 Supplement, p. 447, sec. 53.14F.

A Treasury Regulation deals with the specific circumstance: " * * * Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders, or in accordance with the general policy of such supervisory officers, charge off· debts in whole or in part, such debts shall, in the absence of affirmative evidence clearly establishing the contrary, be presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be." Regulations 74, Article 191.

This presumption has often been invoked by the taxpayer. See Paul & Mertens, Law of Federal Income Taxation, Vol. 3, secs. 28.76 and 28.79. Its rationale has been well stated by Judge Northcott speaking for the Fourth Circuit Court of Appeals. "Here we have a case in which one branch of the government can compel the taxpayer to take ˙an action with regard to its securities which, when taken, will not be recognized by another branch of the government. This is not fair to the taxpayer. There should be at least some semblance of co-ordination between the several branches of the government in dealing with a taxpayer." Citizens' Nat. Bank of Orange v. Commissioner of.Internal Revenue, 4 Cir., 74 F.2d 604, 605, 100 A.L.R. 699.

Ours is the converse case. But if co-ordination between two branches of the government is desirable in fairness to the taxpayer, it is equally desirable in fairness to the taxing authorities and the public they represent. We note that the presumption has since been made conclusive, Regulations 86, Article 23(k)–1 as amended by T. D. 4633, CBXV–1, p. 118; Regulations 94, Article 23(k)–1.

The solitary fact tending against the "satisfaction" of the Commissioner appears in the taxpayer's voluntary forfeiture of the timber license by December 31, 1930 (see the curiously drawn Agreed Statement of Facts). This abandonment is in direct contradiction to the impression the taxpayer had used to persuade the Secretary of Banking. It amounts to a self-creation of non-recoverability. If we had to decide, we should say that the Commissioner, not only may, but should, ignore it as an element in his determination.

In conclusion, we observe without emphasis that the rule of Commissioner v

Liberty Bank & Trust Co., above cited, as to the necessity of partial. charge-off by the taxpayer, which was conceded to obtain by both parties on the argument of this case, has been effectively challenged by the Ninth Circuit Court of Appeals in Santa Monica Mountain Park Co. v. U. S., 99 F.2d 450.

The judgment of the District Court is reversed.