**E. C. PALMER & CO., LIMITED, v.
UNITED STATES.**

**Civ. A. No. 716.**

District Court, E. D. Louisiana.

Sept. 19, 1944.

Thomas A. Williams and Henican, Bethea, James & Cleveland, all of New Orleans, La., for plaintiff.

Herbert W. Christenberry, U. S. Atty., and Henry C. Vosbein, Asst. U. S. Atty., both of New Orleans, La., for defendant.

BORAH, District Judge.

Disallowing a claimed deduction of partial worthlessness on a bank deposit account in the amount of $12,102.69 and limiting plaintiff's deductible loss to $2000 for the fiscal year ending November 30, 1937, the Commissioner determined a deficiency in excess profits and income taxes for that year of $3,992.50. Claim for refund was filed and rejected and this action was brought by plaintiff to recover the taxes which it paid under protest and which it alleges were illegally assessed and collected.

The case was tried without a jury on the following agreed statement of facts:

1. On March 1, 1933, the Canal Bank & Trust Company of New Orleans, now in liquidation, went on a restricted basis under the so-called "banking holiday" after which the bank was not permitted to reopen for business. The plaintiff was a depositor of the bank and had on deposit in an ordinary checking account at the time of the closing the sum of $37,768.68 of which five (5) percent thereof, or $1,888.43, was immediately made available to the plaintiff, leaving a deferred balance on deposit of $35,880.25.

2. On May 20, 1933, the said bank filed formal liquidation proceedings in the Civil District Court for the Parish of Orleans, State of Louisiana, and simultaneously therewith paid to the plaintiff thirty (30) percent of $37,130.73, which represented the aforesaid restricted balance less certain items in transit. The remaining balance thereafter amounted to $24,205.37.

3. The plaintiff in its federal income tax return for the year 1933, which was at that time filed on the calendar year basis, claimed a deduction in the amount of $12,102.69, representing fifty (50) percent of the said balance of $24,205.37. Such deduction was listed in Item 19 on the first page of the return and designated: "Loss-Provision on amount due from bank in liquidation." Upon disallowance of the deduction, the plaintiff reconsidered its proof as to its right to the deduction, and then acquiesced in the disallowance and

paid the additional tax for the year 1933 based on the rejection of the claimed deduction. A certified copy of the return for the year 1933 is attached hereto, marked "Exhibit A", and made a part hereof.

4. On or about February 13, 1937, plaintiff transferred $8000 of its aforesaid credit with the Canal Bank & Trust Company of New Orleans, now in liquidation, to one A. C. Easterling; on or about February 15, 1937, and February 16, 1937, respectively, the plaintiff transferred additional amounts of $11,000 and $5,205.37 of said credit to the said A. C. Easterling, for which plaintiff received fifty (50) percent of said amounts, or $12,102.68.

5. On February 15, 1938, the plaintiff filed its Corporation Income and Excess-Profits Tax Return for the fiscal year ended November 30, 1937. In the return a deduction was claimed in Item 25(b) and was described as follows: "Loss on sale of restricted deposits—Canal Bank & Trust Co. in Liquidation—$12,102.69." In Schedule M of the same return the said deduction is listed at Item 6(a) as "Loss on sale of Restricted Deposits—$12,102.69." A certified copy of the return for the fiscal year ended November 30, 1937, is attached hereto, marked "Exhibit B", and made a part hereof.

6. As a result of an examination of the return by Internal Revenue Agent E. D. Matheny the deduction of $12,102.69 was limited to $2,000 on the ground that the loss or deduction claimed grew out of the sale of a capital asset. Thereafter plaintiff was advised of proposed tax deficiencies and under date of June 15, 1939, filed a protest in respect of such deficiencies. Subsequently plaintiff requested a hearing before the New Orleans office of the Southwestern Division of the Technical Staff but later filed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax for the taxable year ended November 30, 1937. An assessment was accordingly made by the Commissioner of Internal Revenue of $2,917.80 income tax, with interest thereon of $387.94, and excess-profits tax of $606.17, with interest thereon of $80.59, or a total of $3,992.50, all of which was paid on May 20, 1940, to the then Collector of Internal Revenue, Rufus W. Fontenot.

7. On July 3, 1940, plaintiff filed a claim for the recovery of the deficiency taxes and interest paid of $3,992.50. The claim is based on the ground that the account which plaintiff had with the Canal Bank & Trust Company of New Orleans, now in liquidation, had been "ascertained" to be partially worthless prior to the dates of the transfers of the account to the aforesaid A. C. Easterling. The claim was rejected by the Commissioner of Internal Revenue in a registered letter under date of March 13, 1941. Certified copies of the claim for refund and of the letter from the Commissioner rejecting such claim are attached hereto, marked respectively "Exhibit C" and "Exhibit D", and made a part hereof.

▉ The Commissioner has refused to allow a deduction of $12,102.69 for the fiscal year ended November 30, 1937 on account of the partial worthlessness of the bank deposit account and has ruled that plaintiff's loss is limited to $2,000 under the provisions of Sections 23(j) and 117 (d) of the Revenue Act of 1936, and his ruling has the support of a presumption of correctness, and the plaintiff has the burden of proving it to be wrong. Welsh v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212.

In an effort to discharge the heavy burden of proving that the Commissioner's action was plainly arbitrary, evidence was offered at the trial to support the claim of plaintiff that the deposit account was in fact partially worthless to the extent of fifty percent and was so determined by it in the early part of February, 1937, prior to the sale of the account.

▉ It is beyond the province of the court to pass judgment on the preponderance or the weight of the evidence before the Commissioner, nor may it substitute its judgment upon the facts for that of the Commissioner. It is the plain duty of the court to determine from this record, not whether the taxpayer's claim should be granted, but whether its denial by the Commissioner was arbitrary or without foundation in law.

At the trial these facts were developed: That the annual reports of the Canal Bank & Trust Company in Liquidation showed an operating surplus which increased from year to year; that the depositors' prospects for receiving additional payments were better in the year 1937 than in any preceding year; that in 1937 the bank in liquidation had disposed of the greater part of its quick-moving assets and the prospects of eventual liquidation of the remaining assets depended largely on agriculture; that

any one who consulted the liquidator about selling deposits received the invariable reply that he had every right to believe he was going to get additional payments but that the liquidator did not know when those payments would be made; and that the taxpayer did not consult the liquidator about selling its deposits before it sold them. It also appears that plaintiff retained throughout the period in question the same auditor and tax counsel; that in the early part of 1937 plaintiff, acting through its president, sought the advice of its tax counsel and was advised that if it sold the deposit account at fifty percent of its value a deduction could be sustained in that year; that in the early part of that year when the market became active and the frozen deposits were being sold for around forty-eight or forty-nine percent of their value, plaintiff's president authorized its broker to sell when the trading would permit it to realize the fifty percent value at which these frozen deposits were being carried on their books "because," to use the precise language of plaintiff's president, "we were carrying it as a frozen asset of fifty cents on the dollar, because we had not been able to get a bid that high, and I authorized my broker when he could get that and turn it into liquid money, to proceed and sell it, and not until then, that I did not think we should take any further loss." At another point in his testimony he explained his action in selling the account in this language: "It looked like a good piece of business after talking to various other business men of what was a good way out of a bad situation, and put it into money, because we did not know when—it might be ten, twenty or thirty years before we could get a final settlement without any interest." The witness was also asked this question: "You did not know in your own mind what that deposit was worth?" To which he replied: "Certainly I did not. I felt confident it would be ultimately paid, and still think so." And having in mind the fact that plaintiff's books were kept under the supervision of the same auditor and tax counsel, it will be remembered that plaintiff's tax return for the year 1937 describes the deduction claimed as "Loss on sale of restricted deposits—Canal Bank & Trust Co. in Liquidation—$12,102.69."

Had these and other facts of like import been before the Commissioner he could have drawn the same conclusions from them as he did from the facts presented in support of plaintiff's protest of June 15, 1939.

In view of the facts disclosed, it cannot be said that the Commissioner acted arbitrarily or abused the discretion vested in him in disallowing plaintiff's claim for refund. In the absence of the abuse of discretion on the part of the Commissioner in rejecting the claim, the court would not be justified in reversing his decision. Nor can it be said that the Commissioner's denial of the taxpayer's claim was without foundation in law.

Section 23 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 828, provides:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(j) *Capital Losses.* Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117(d).

"(k) *Bad Debts.* Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable *only in part,* the Commissioner *may* allow such debt, in an amount not in excess of the *part charged off* within the taxable year, as a deduction." (Italics supplied.)

Section 117 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 874, provides:

"\* \* \*

"(b) *Definition of Capital Assets.* For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

\* \* \* \* \*

"(d) *Limitation on Capital Losses.* Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. \* \* \*"

Article 23(k)-1 of Regulations 94 relating to the Revenue Act of 1936 provides: "* * * If all the surrounding and attending circumstances indicate that a debt is worthless, *either wholly or in part,* the amount which is worthless and *charged off* or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. There should accompany the return a statement showing the propriety of any deduction claimed for bad debts. * * * Before a taxpayer may charge off and deduct a debt in part, he must ascertain and be able to demonstrate, with a reasonable degree of certainty, the amount thereof which is uncollectible. * * * In determining whether a debt is worthless in whole or in part the Commissioner will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Partial deductions will be allowed with respect to specific debts only." (Italics supplied.)

It is seemingly plain from the statute and the regulations that a charge-off during the taxable year is a condition precedent to the allowance of a deduction for bad debts, whether total or partial, and since it is admitted in the stipulation and in the evidence that plaintiff made no charge-off other than in December, 1933, it is not entitled to the claimed deduction for the year 1937, even though it be assumed that the deposit account in the bank was partially worthless in that year to the extent of fifty percent and was so ascertained in that year by plaintiff prior to the sale of the account.

The defendant conceded on the argument of the case that "an additional charge-off is not necessary at a later date provided such account was not re-entered at its face value on the taxpayer's books." It is believed that this concession on the part of the defendant is ill-advised. It is certainly not supported by the case of First National Bank of Fort Worth v. Commissioner of Internal Revenue, 5 Cir., 140 F. 2d 938, the principal authority on which it relies. I do not read that decision as authorizing the omission of a charge-off during the taxable year. On the contrary the court made a point of the fact that a charge-off was made in the taxable year 1938, for it quoted verbatim the ledger entry recording such charge-off and characterized as error the tax court's finding that there were no charge-offs made in the accounts during that year.

I am fully cognizant of the fact that the courts are by no means in accord on the necessity of a charge-off in the case of a partially worthless debt and I am also mindful of the view often expressed and applied by the Supreme Court that "every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.'" White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172.

Considering the authorities and the plain language of the statute, I am persuaded that a charge-off during the taxable year is a condition precedent to the allowance of a deduction for bad debts both total and partial. And since it is admitted that in December, 1933, the debt was charged off on the books of the taxpayer as fifty percent worthless and that no other charge-off was subsequently made, it follows that plaintiff is not entitled to the claimed deduction for the year 1937, even though it be assumed, as I am unwilling to do, that the deposit account in the bank was partially worthless in that year to the extent of fifty percent and was so ascertained in that year by plaintiff prior to the sale of the account. Santa Monica Mountain Park Co. v. United States, 9 Cir., 99 F.2d 450, certiorari dismissed 306 U.S. 666, 59 S.Ct. 647, 83 L.Ed. 1062. See comment in United States v. Beckman, 3 Cir., 104 F.2d 260, 264.

The Commissioner was right in limiting plaintiff's loss to $2,000 under the provisions of Sections 23(j) and 117(d) of the Act.

The complaint is accordingly dismissed.