## MILFORD TRUST CO. v. UNITED STATES.

### Civil Action No. 949.

District Court, D. Connecticut.

Oct. 31, 1945.

---

Charles M. Lyman, of New Haven, Conn., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Ruppert Bingham, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and Edward J. Lonergan, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

HINCKS, District Judge.

This is an action against the United States for a partial refund of taxes paid for the calendar year 1936, a claim for that refund having been rejected by the Commissioner of Internal Revenue.

### Findings of Fact

1. Plaintiff the Milford Trust Company is a corporation organized under a charter granted by the General Assembly of the State of Connecticut and is located and doing business in the Town of Milford, County of New Haven and State of Connecticut.

2. On April 13, 1935, an extension of time having been granted, plaintiff filed on a cash basis its federal corporation income and excess-profits tax return for the calendar year 1934, showing a net loss of $118,012.37.

3. In said return plaintiff claimed as an item of expense the sum of $2,493.66 paid to the Federal Deposit Insurance Corporation and as bad debts the sum of $2,348.29 which had been charged off on two notes of N. M. Lewis which aggregated $2,393.79, and the sum of $715.00 charged off on a note of W. E. Seeley amounting to $995.33.

4. Said payments to the F.D.I.C. were in fact deposits in a temporary fund and were not used to pay assessments during the year 1934. However, F.D.I.C. subsequently made the following assessments against the plaintiff, viz.: October 1935, $342.49; January 1936, $511; and July 1936, $535.89.

5. Said notes of Lewis and of Seeley were secured by collateral.

6. Early in 1934, the State Bank Commissioner had recommended to plaintiff that certain notes and mortgages be written off as partially worthless including said Lewis and Seeley notes.

7. It was the practice of plaintiff's officers and directors to accept the recommendations of the Commissioner without regard to their own opinion or knowledge as to the collectibility.

8. Pursuant to said recommendation plaintiff in 1934 charged off on its books among other notes the entire Lewis note for $1,498.29, $850 on the $895.50 Lewis note, and $715 on the $995.33 Seeley note.

9. At the time of these charge-offs plaintiff had reasonable grounds for believing that the notes were collectible and the facts known to plaintiff did not show them to be worthless.

10. At the time of making the loan to Lewis plaintiff relied in part for its payment on Lewis' earning capacity: the value of his collateral furnished no margin of security on the note. At the time of said charge-offs Lewis was known to plaintiff to have an earning capacity of $75 a week which was reduced to about $18 per week by 1936.

11. In 1936, after its continued efforts to obtain payments from said Lewis proved unsuccessful, plaintiff sold his collateral and thereby realized $89.29, which was $43.79 in excess of the amount to which the Lewis debt had been charged down in 1934.

12. After the charge-off in 1934, plaintiff continued its efforts to collect from Seeley and actually collected $150.33 in 1934, $150.00 in 1935, and $50.00 in the first half of 1936, or a total of $350.33. Shortly after the last of said payments Seeley died and plaintiff learned from the probate records that he had left no estate, whereupon the collateral was sold on August 12, 1936, for $192.53.

13. The balance of said debts became in fact worthless in 1936.

14. About November 1, 1937, plaintiff employed a new accounting firm to prepare its return for the year 1937 and to make a survey of prior tax returns. This firm found six or eight items in plaintiff's 1934 return which it considered erroneous. Accordingly the firm prepared and plaintiff filed on December 9, 1937, a new return marked "Amended Return" for the year 1934.

15. In this "Amended Return" for 1934, plaintiff eliminated any deduction for the Lewis and Seeley debts and any deduction for F.D.I.C. payments of $2,493.66 from its income for 1934.

16. On March 15, 1937, plaintiff filed its corporation income and excess-profits tax return for the calendar year 1936, on a cash basis showing a tax of $1,725.31 which it duly paid. This tax was computed upon income for 1936 without deduction for the Seeley and Lewis debts and without deduction for the F.D.I.C. assessments made and paid in 1936 ($511.00 and $535.89, total $1,046.89, see Par. 4, supra). The tax payment was made in installments and the last installment was paid on December 6, 1937.

17. On January 26, 1938, plaintiff filed a claim for refund for the calendar year 1936, including as a basis thereof a claim to the deduction of said debts and of said F.D.I.C. item of $1,046.89, which claim as to these items was disallowed by registered letter dated June 30, 1941.

18. The deduction of these contested items would have reduced plaintiff's net income for 1936 by $3,803.86—$1,046.89 on account of the F.D.I.C. 1936 assessments and $2,756.97 on account of the bad debts. The deduction if allowed would have reduced the plaintiff's tax liability for 1936 by $570.58 (the applicable tax rate being 15%).

19. The "Amended Return" was not formally accepted or rejected by the Commissioner of Internal Revenue. It was used, however, in part by his agent in making an Internal Revenue Agent's report.

## Conclusions of Law

1. The Lewis and Seeley debts were proper deductions for the year 1936.

2. The F.D.I.C. assessments made and paid in 1936 constitute items of expense properly deductible from plaintiff's 1936 income.

3. The plaintiff is entitled to recover the sum of $570.58 with interest from December 6, 1937.

## Opinion

The statute involved is the Revenue Act of 1936, c. 690, Sec. 23(k), 49 Stat. 1660, 26 U.S.C.A.Int.Rev.Code, § 23(k):

"Deductions from gross income. In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*

"(k) Bad debts.

"(1) General rule. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

■ To be allowable as a deduction, therefore, a debt must have (1) been ascertained to be worthless during the taxable year, and (2) been charged off within the same year. Santa Monica Mountain Park Co. v. United States, 9 Cir., 99 F.2d 450, 453; American Cigar Co. v. Commissioner, 2 Cir., 66 F.2d 425; Duffin v. Lucas, 6 Cir., 55 F.2d 786.

■ The main controversy in the case here turns on the question whether the Lewis and Seeley debts may be deemed to have been "charged off within the taxable year" (1936), within the meaning of the Act.

As to this, it must be observed that the charge-off in 1934, although apparently absolute in its terms, was shown by the evidence to be qualified or conditional only. Notwithstanding the charge-off, the debtors were known still to have some earning capacity and the officers of the bank still believed that the notes were collectible and persisted in their efforts to collect them. And although in 1934, as an incident to the charge-off on the notes the plaintiff wrote off all value for Seeley's collateral and all value in excess of $45.50 for Lewis' collateral, nevertheless the plaintiff persisted in holding the collateral. Thus the plaintiff's conduct plainly demonstrated that in 1934, irrespective of the technical entry on its books made under official pressure, it had not ascertained the debts or indeed any part thereof to be worthless and that until that ascertainment took place it viewed the charge-off on the books as conditional only and subject to a subsequent ascertainment of worthlessness. Cf. First National Bank of Fort Worth v. Commissioner, 5 Cir., 140 F.2d 938, and Stoddard v. Commissioner, 2 Cir., 141 F.2d 76.

The ascertainment of worthlessness is clearly shown by the evidence to have been made for the first time in 1936. The evidence shows that in 1936 the plaintiff liquidated the collateral and abandoned all hope of collecting the deficiency due on the notes. Presumably the sale of the collateral in 1936 was recorded in the books of the bank (although the precise entry does not appear in evidence). But the liquidation of the collateral determined the amount of the deficiency. Notwithstanding the former charge-off, the debtors were entitled to be credited with the proceeds of the sales irrespective of the precise form in which the sales were recorded in the books of the bank. Thus the written charge-off made in 1934 became absolute not until 1936, and I hold that in 1936 the debts were "charged off" within the meaning of the Act.

There are, to be sure, a multitude of cases holding that for a taxpayer who keeps books a charge-off to satisfy the Act must be recorded on the books. And here the plaintiff's books are not in evidence. However, we have a stipulation which has the quality of conceded evidence. By this stipulation it appears that after the written charge-off in 1934 Seeley made some thirteen payments of specified amounts on specified dates down to April, 1936, and that the collateral of both Lewis and Seeley was liquidated for specified amounts on specified dates in 1936. From this stipulation it is a fair inference that the transactions just referred to were all recorded on the plaintiff's books; otherwise, doubtless they would not have been conceded. These items must be read in connection with the plaintiff's books for 1934 showing the origin of the transaction to which alone they can relate and must be interpreted with a view to the plaintiff's bookkeeping treatment of the items in that year. Thus viewed, the entries showing the cash collections subsequent to 1934 and the liquidation of the collateral in 1936 were modifications of the qualified charge-off entered in 1934. And with the final entry on each account the existence and the amount of the charge-off became final. Thus the plaintiff satisfied the requirement that for a taxpayer with books the charge-off must be a charge-off within the taxable year and must appear from book entries. Cf. First National Bank of Fort Worth v. Commissioner, supra.

This conclusion has the support of Lebanon National Bank v. Commissioner, 3 Cir., 76 F.2d 792, and of three decisions by the Board of Tax Appeals, Appeal of Mason Machine Works, 3 B.T.A. 745, Ap-

peal of First National Bank of Los Angeles, 6 B.T.A. 850, and Appeal of Georgia Engineering Company v. Com'r, 21 B.T.A. 532. It seems to conflict with no adjudicated decisions. In Ludlow Valve Co. v. Durey, 2 Cir., 62 F.2d 508, 509, when the court said that deductions previously written off "could not be written off again," it was speaking of previous write-offs made without pressure and without qualification, upon an ascertainment of worthlessness. There was apparently no evidence whatever in that case of a technical write-off made when the taxpayer still believed the debt collectible. And the objective of the Act was stated to be the prevention of choice to the taxpayer as to whether he would take his deduction when the loss was ascertained or wait until another year when the deduction would redound to his greater tax advantage. Such an objective is not thwarted by my conclusion here. There is nothing in the Act or the cases to suggest that a technical and tentative bookkeeping entry was intended forever to destroy the deductibility of a debt not ascertained to be worthless until a subsequent year.

In E. C. Palmer & Co. v. United States, D. C., 57 F.Supp. 233, the deduction which was disallowed related to a debt which concededly had not been charged off within the taxable year. In effect, the court held merely that the taxpayer was bound by this concession and gave no consideration to book entries made in the taxable year relating to the final liquidation of a debt previously charged off presumably upon an ascertainment of worthlessness.

■ As to the substantive right of the plaintiff to deduct its 1936 payments of assessments made by F.D.I.C., there can be little doubt. Commissioner v. Boylston Market Ass'n, 1 Cir., 131 F.2d 966, 144 A.L.R. 528.

■ There is, however, the procedural question which arises from the fact that the payment of these assessments was made by charges against preliminary payments which the plaintiff made into the F.D.I.C. fund in 1934 prior to the actual levy of the assessments in 1936 and then had claimed these preliminary payments as deductible expenses in its tax return for 1934—erroneously according to its later advices. And the same situation arises in connection with plaintiff's claimed deduction of the Lewis and Seeley debts: These also were claimed in the plaintiff's 1934 return although, as now appears, the worthlessness of these debts had not then been ascertained. Thus arises the question whether the plaintiff's amended return for 1934, filed in 1937, whereby its earlier claims of deduction for these items were eliminated may serve to clear the ground for the allowance of these deductions on the plaintiff's return for 1936.

As to this, I hold that the "Amended Return" filed in 1937 was indeed effective for such purposes.

■ During the years involved there was, to be sure, no statutory authority for the acceptance of amended returns. Such amendments have, however, been accepted by the Commissioner of Internal Revenue for the purpose of correcting errors. They are not forbidden by statute, as they were in the case of capital stock tax returns. 26 U.S.C.A. Int.Rev.Code, § 1202(a). Amended income tax returns have frequently been accepted, at least in cases where there has been no election involved. Pictorial Review Co. v. Helvering, 63 App. D.C. 21, 68 F.2d 766, Morrow, Becker & Ewing v. Commissioner of Internal Revenue, 5 Cir., 57 F.2d 1. Errors of law as well as of fact may be corrected. Cf. Richardson v. Commissioner, 2 Cir., 126 F.2d 562, 140 A.L.R. 705. Here there was plain error in the 1934 return. The amendment was the plaintiff's only method to correct that error. And if the correction indirectly had the effect of improving plaintiff's tax position, that result was incidental only.

■ The amendment, of course, did not bind the Commissioner. Doubtless he could accept it and acquiesce in its content. Not having done so, he was free to oppose. Having taken no formal position thereon prior to trial, the burden was on the plaintiff to show not only that it was entitled to the deductions on its 1936 tax but also that by its amendment of its return for 1934 it had finally surrendered its erroneous and inconsistent claim to the deductions in that earlier year.

■ On that issue an excerpt from the report of an Internal Revenue Agent, wherein reference was made to the amended return for 1934, was admissible: it tended to show that the amended return was indeed on file. Suisman & Blumenthal, Inc. v. Eaton, D.C., 8 F.Supp. 217.

As my findings show, the plaintiff sustained the burden of proof on every essential issue. It is entitled to recover.